### RACHEL ARNOLD v. ELIAS WEIKER.

1. STREET—*Dedication.* It sufficiently appears by the plat and dedication of the town site of Peace (now the city of Sterling) that the strip lying next south of the Atchison, Topeka & Santa Fe Railroad depot grounds, and extending from the west line of Broadway to the east line of Tenth street, was designed for public use as a street or highway.

2. VACATING ORDINANCE — *Right to Question Validity.* If compensation is allowable on the vacation of part of a street in a city of the third class, the validity of a vacating ordinance not providing for the assessment and payment of damages, which is treated as valid by the city and the owners of property immediately abutting on such vacated part of the street on both sides, cannot be successfully challenged by a person not shown to have an interest in any real property abutting on the street.

3. DAMAGES—*Assessment.* The evidence examined, and *held* that the court did not err in the assessment of the amount of the recovery of Weiker against Coulter so as to prejudice the plaintiff in error as the junior mortgagee.

*Error from Rice District Court.*

THIS action, as originally tried before Hon. Samuel Jones, judge *pro tem.*, at the January term, 1890, was quite complicated. Seven mortgages had been executed upon the premises known as the "International Rolling Mills," in Sterling, or upon different parts of or interests in said property. Rachel Arnold brought her action in the first place to recover upon a promissory note, and to foreclose a mortgage securing the same, both being executed by J. O. Stow, a part owner, and Mary J. Stow, his wife. This indebtedness was settled before the trial of the cause, but numerous lien-holders having been brought in as parties, the plaintiff filed a pleading called an answer and cross-petition for the purpose of recovering upon a promissory note executed by J. R. Coulter and J. W. Oliver and wife for $1,175 with interest at 12 per cent. per annum from April 16, 1889, the date of said note, and to foreclose a mortgage of even date executed to secure the same — said J. R. Coulter and J. W. Oliver being part owners of the mill property. It was admitted in this answer and cross-petition that all the mortgages were prior to the plaintiff's, except those of Elias Weiker, and that his was superior as to lots 114 and 116, Jackson street, but inferior as to the residue of the property. Elias Weiker answered, counting on the last two of a series of four promissory notes for $1,374.50, each executed by H. L. Millard, July 15, 1884, and payable in one, two, three and four years, respectively, from date, with interest at the rate of 8 per cent. per annum from date, payable annually; it being alleged that there was due on said two promissory notes the sum of $2,749, with interest on the same from July 15, 1886, at 8 per cent.

per annum.    These notes were secured by two mort-
gages of the same date, said H. L. Millard being then
a part owner of the property.    One of these mortgages
was upon lots 114 and 116, Jackson street, and the
other upon a leasehold interest of a tract north of
said lots, the lease being under the Atchison, Topeka
& Santa Fe Railroad Company.

On March 10, 1886, Millard and wife conveyed all
their interest to J. R. Coulter and J. W. Oliver, said
J. R. Coulter expressly assuming in the deed the
mortgage indebtedness owing to Elias Weiker, it being
recited that it was upon three notes amounting to
about $4,000.    Millard had paid one of the four notes
before the conveyance to Coulter and Oliver ; and
after the conveyance Coulter paid another, leaving
two only remaining at the time that Weiker filed his
answer and cross-petition.    Millard and wife were
not made parties, but Weiker asked judgment direct
against J. R. Coulter on his assumption of the indebt-
edness of Millard, and he sought to foreclose the mort-
gages against Coulter and Oliver and their wives.
Judgment was rendered in favor of Weiker against J.
R. Coulter for $3,543, and decree of foreclosure was
entered against Coulter and Oliver and their wives,
and the mortgages of Weiker were held to constitute
liens superior to that of the plaintiff.    The case was
brought to this court by Rachel Arnold, J. R. Coulter
and J. W. Oliver, but afterward Coulter and Oliver
caused the petition in error to be dismissed, and the
judgment affirmed as to themselves, leaving Rachel
Arnold the sole plaintiff in error, and the contest here
is mainly as to the priority of these mortgage liens.

The controversy between the parties grows prima-
rily out of the status of a certain platted strip of
ground about 60 feet in width, lying between the north

end of lots 114 and 116, Jackson street, and the right-of-way and depot grounds of the Atchison, Topeka & Santa Fe Railroad Company, on which strip the International Roller Mills and Elevator and a dump are mostly located, the remaining part being on said lots; the plaintiff claiming that this strip was private property, and that it had been mortgaged to her by J. R. Coulter and J. W. Oliver, who had obtained title to it from the Arkansas Valley Town and Land Company which had procured its deed direct from the Arkansas Valley Town Company, the original proprietor of the town site; while Weiker contended that the disputed ground was platted as a street or way; that it had been vacated, one-half thereof reverting to the owners of said lots 114 and 116, and the other half to the railroad company, and that these interests were all covered by the mortgages of Millard to him, the indebtedness upon which had been assumed by J. R. Coulter. The town site of Peace was platted by the Arkansas Valley Town Company September 9, 1874, on section 21, township 21, range 8 west. It was stated in the dedication that the "avenues and streets and alleys are laid out parallel with and at right angles to each other," and that "the width of all avenues, streets and alleys, and the length and width of lots and blocks are marked in feet on the map." The central or business street running north and south is Broadway; the other north and south streets are numbered, unless it be a strip on each side of the town site not uniform in width, and being neither numbered nor named. The central thoroughfare east and west is Main street; the other east and west streets are named for certain of the presidents, unless it be strips on the north and south sides respectively of the town site not uniform in width and neither

numbered nor named. The railroad is marked as running in a straight line from a point about 400 feet north of the southeast corner of the section and extending diagonally to a point a little north of the quarter corner on the west side. The depot grounds are platted as being 300 feet in width, and extending from the west side of Broadway to the east side of Tenth street, and across Seventh, Eighth and Ninth streets, which are represented as stopping on either side, these grounds also cutting off and interfering with Monroe street on the north and Jackson street on the south. On the plat these depot grounds are inclosed with solid lines at the sides and at both ends. On each side is a strip opening into Broadway at the east and into Tenth street at the west 65½ feet in width, there being no lines across these strips at the ends. It is unnecessary to further describe the strip on the north side nearly corresponding with that on the south of the depot grounds. Seventh, Eighth and Ninth streets, running north and south, open into the south strip, there being no lines on the south side of the strip, except those bounding the lots and blocks. Jackson street, running east and west, also opens into this strip. At a point near said lots 114 and 116, the strip is marked as only 60 feet wide. Some of the lots would not have access to any street, unless this strip be so considered, although such lots would have an outlet by an alley. The length of the strip is not marked, and could not be ascertained from the plat except by scaling. It is not named or numbered as a street. The numbering of the lots is by streets, and not by blocks, and no lots are numbered as fronting on this strip. The lines of lots 114 and 116, Jackson street, which run north and south are shortened by the diagonal course of the strip. The town site of Peace was

incorporated as a city of the third class by order of the district judge dated April 18, 1876, published April 27, 1876. By ordinance No. 136, which went into effect by publication September 27, 1883, the mayor and council assumed to vacate all that part of this strip lying north of lots 114 and 116, it being designated therein as Railroad street. There is no provision in the ordinance for the ascertainment or payment of damages by reason of such vacation.

*A. M. Lasley*, for plaintiff in error.

*John N. Ives*, for defendant in error.

The opinion of the court was delivered by

MARTIN, C. J. : I. The first and principal question in this case is whether, by the platting of the town site of Peace, the strip of ground lying next south of the depot grounds was shown to be intended for sale, or to be reserved for public purposes, or for further platting or use by the original proprietor. We think it quite clear that it was devoted to public use, although not named as a street, nor crossing the other streets and alleys at right angles. It was evidently designed to furnish access as a street or highway to the depot grounds, not only for the owners of property abutting on the strip, but for all the people of that part of the town site lying south of the railroad and between Broadway and Tenth street, and also as the means of ingress to and egress from Broadway and Tenth streets for the property on Jackson street, and also that abutting upon the strip between Seventh street and Broadway ; and we think that this sufficiently appears without the use of any evidence other than that furnished by the plat and the dedication, and therefore the question as to the admissibility of evi-

dence of dedication by user and acquiescence will be immaterial. A contrary construction would be inconsistent with §§ 1, 5, 6 and 7 of chapter 78, General Statutes of 1868, concerning the plats of cities and towns, and also with the case of *Hitchcock v. City of Oberlin*, 46 Kas. 90, 94, 95, and the authorities there cited. It seems incredible that a town-site proprietor, intending a strip rhomboidal in form for sale or for further platting or private use, would not inclose it by lines on both sides and at each end, as in the case of the depot grounds. In the present instance there is but one solid line, and this is necessary to mark the southern boundary of the depot grounds. The lines on the south side of the strip are fragmentary, being only the northern boundaries of lots and blocks, and the strip opens into Broadway at the east and Tenth street at the west, and Seventh, Eighth, Ninth and Jackson streets open into it from the south. Under these circumstances no purchaser of a lot abutting on the strip could reasonably anticipate that all these streets were blockaded, and access cut off on the north side by a private reservation extending across the streets and the ends or sides of the lots.

. II. The plaintiff challenges the validity of ordinance No. 136, on the ground that no provision was made for the assessment and payment of damages to property owners by reason of the vacation of said strip lying north of said lots 114 and 116. But whether damages are recoverable or not in such case, or the assessment and payment thereof conditions precedent to the taking effect of the vacation, we think it unnecessary to decide. (See ¶ ¶ 578, 579, 580, 582, 811, and 980, Gen. Stat. of 1889, as to vacation of streets and alleys by cities of the first, second, and third classes, respectively.) The ordinance was passed and

approved in 1883. The city, the owners of lots 114 and 116 on one side, and the railroad company on the other, treated it as valid. The railroad company let and leased its part of the vacated ground to Millard; and the improvements were made and Millard's interests mortgaged to Weiker in 1884. In 1886, Millard conveyed to Coulter and Oliver, and Coulter assumed the mortgage indebtedness then owing by Millard to Weiker. In 1888, Rachel Arnold, J. O. Stow, J. R. Coulter, and J. W. Oliver, partners as J. O. Stow & Co., obtained a quitclaim deed for the strip from the town and land company, which had neither title nor possession to convey. In 1889, Coulter and Oliver mortgaged their interest to said Rachel Arnold, but it does not appear that Coulter had any interest except what he obtained from Millard in 1886, and that was subject to the payment of Millard's indebtedness to Weiker, as before stated. So far as shown, Rachel Arnold has no standing whereby she may contest the validity of the ordinance. If it were conceded to be void, we do not see how she could profit by the concession.

III. It was claimed by Coulter in his answer that the title to the strip of ground had failed, and that there was no consideration for his assumption of Millard's indebtedness to Weiker, and he prayed judgment against Weiker for $1,615.55, alleged to have been paid by him on the indebtedness. The plaintiff interposed no plea of payment, but she claims the right to make any defense which Coulter might have made as to the amount due, and that she was precluded by the rulings of the court from so doing.

The grounds upon which the court below sustained objections to some of the questions asked Coulter as to payments made, are not apparent, but the trial was by

the court, and, notwithstanding the adverse rulings, Coulter did testify to the several payments, showing that they amounted to $1,800, which was more than he had alleged, and we think it sufficiently appears by admissions and by Coulter's testimony that he had paid one of the notes and two years' interest on the other two, being $439.84 interest, or $1,814.34 in the aggregate; and the court seems to have taken all this into consideration, and, therefore, the judgment against Coulter is not too large, and the plaintiff, as the holder of the junior mortgage, has no legitimate grievance.

Holding these views, we deem it unnecessary to discuss the motion of the defendant to dismiss for want of necessary parties. The judgment of the district court will be affirmed.

All the Justices concurring