Argued 8 December, 1903; decided 11 January, 1904.

## OREGON CITY v. OREGON & CAL. RAILROAD CO.

[74 Pac. 924.]

DEDICATION—REFERENCE TO MAP.

1. The act of the owner of realty in selling and conveying parts of it by reference to a townsite plat made and recorded by one who did not have title is an adoption of the plat as his own, and constitutes a dedication to the public of the property thereon marked as streets and parks.

IMPLIED DEDICATION BY MARKING ON MAP.

2. Where a plat of a town shows a strip of land varying in width from a few inches to one hundred feet, extending through the town, with alleys and cross-streets opening into it, and which affords the only means of connection between two portions of the town, and the strip is not marked in any way, but other vacant spaces on the plat are marked as reserved for private property, the strip must be regarded as dedicated to the public.

ACCEPTANCE OF DEDICATION BY EXERCISING CONTROL.

3. Where the public has uninterruptedly used a portion of a tract of land in a city for a public park, and another portion thereof as a passageway to reach stairs which have been constructed by the city leading from one part of the town to another, and the municipality has exercised authority over the property by passing ordinances concerning it and granting a right of way to a railroad through the same, an acceptance of the dedication of such land to the public is shown, though there has been no formal action, and the city has not beautified or even cleared it.

ADVERSE POSSESSION BASED ON PERMISSIVE USE.

4. An adverse claim of title or right cannot be founded on a possession initiated and continued by another's permission.

From Clackamas: THOMAS A. McBRIDE, Judge.

This is a suit by Oregon City against the Oregon & California Railroad Company to determine an adverse claim to real estate. In 1844 Dr. John McLoughlin, who had previously settled upon a tract of land on the east side of the river at the Willamette Falls, afterwards known and designated in the donation act and the records of the general government as the " Oregon City Claim," laid out the town of Oregon City on a portion of the claim lying next to and extending back from the river about 1,300 feet, by causing it to be surveyed into blocks, lots, streets, and alleys. In 1849 he laid out an addition to the town on the east, and in December, 1850, made and acknowledged a plat or map of the entire town, which was recorded in January, 1851. McLoughlin had no title to the property, but he sold and conveyed sundry lots and blocks therein by reference to the map or plat made and filed by him. By the act of Congress of September 27, 1850, commonly known as the " Donation Act," the title to all the property sold or granted by McLoughlin prior to March 4, 1849, was confirmed to the purchasers or donees and their assigns, and the Surveyor General was required to give proper certificates therefor, upon which patents were to issue as in other cases. The remainder of the claim was taken from McLoughlin and given to the Territory of Oregon for university purposes: B. & C. Comp. § 5782 ; Act Cong.

Sept. 27, 1850, c. 76, § 11; 9 Stat. 499. As directed by the donation act, the Surveyor General issued certificates to the holders of title from McLoughlin, and in due time patents were issued to them, in which the land was described according to the map previously made and filed by McLoughlin. After March 4, 1849, and prior to receiving notice of the passage of the donation act, McLoughlin sold a number of additional lots, and in 1851 the title thereto was confirmed to the purchaser by the legislature of the Territory of Oregon: Journals, Local Laws, etc., 1851, p. 34. McLoughlin died in 1857, leaving as his legatees his son, David McLoughlin, his daughter, Eloise Harvey, and her husband, Daniel Harvey. In 1859 David McLoughlin conveyed all his interest in his father's estate to his brother-in-law, Daniel Harvey. In October, 1862, the state legislature formally accepted the government's grant of the "Oregon City Claim" for university purposes, and at the same time conveyed and confirmed title thereto to Daniel Harvey and his wife, Eloise Harvey, the heirs and legatees of Dr. McLoughlin, for the consideration of $1,000: General Laws, 1862, p. 90. After thus becoming the owners of the property, the Harveys did not make a new map or plat of Oregon City, but sold and conveyed by deed lots and blocks therein by reference to the map or plat made and filed by McLoughlin in 1851, and from the date of the filing of such map to the present the McLoughlin map has been used and considered as the only plat of the city.

About 600 feet east of, and substantially parallel with, the river is a perpendicular bluff about 100 feet high, which divides the town as platted by McLoughlin into two portions—the lower town, or that part lying between the foot of the bluff and the river, and the upper town, or that part lying on the top of and back from the bluff. The map or plat shows between the most westerly tier of blocks in the upper town and the edge of the bluff a strip of land varying

in width from a few feet to perhaps 150 feet, and in this space on the map appear the words, "All the open or vacant spaces in front of these blocks are donated for a public promenade." In the dedication by McLoughlin, which accompanied and was made a part of the map, it is stated that "the space between the edge of the bluff" and the tier of blocks referred to "is donated for a promenade for the inhabitants of Oregon City." Between the foot of the bluff and the east line of the first tier of blocks west thereof is a space, varying in width from a few inches to perhaps a hundred feet or more, and about 2,500 or 3,000 feet long, which is not marked on the plat in any way. This space is substantially parallel with and one block distant from Main Street, and is generally referred to by the public and designated on the city records as "Bluff Street." All the lots on the east side of the tier of blocks west of it front or abut upon it, and all the cross streets and alleys open into it. It is not inclosed at either end. On the north it opens into Center Street, and on the south into the space marked "The Mill Reserve." It has never been inclosed in any way, nor has it been improved so that teams can travel it lengthwise, but it is used for crossing at numerous places on the line of cross streets. The upper town extends along the bluff five blocks further south than the lower town.· In the dedication by McLoughlin all the space below the edge of the bluff in front of these five blocks "is reserved as private property," and a similar reservation is made of "all the spaces in front of the blocks on Water Street not covered by the width of the street (sixty feet)."

The Oregon Central Railway Company was organized in 1867 for the purpose of building a railroad from Portland to the southern boundary of the State. In March, 1868, upon its request, the council of Oregon City granted to it a right of way from its tract on any of the streets of the city except Main Street. In 1870 it transferred and con-

veyed all rights of way, franchises, and property belong-
ing to it to the present defendant, which in the same year
applied to the city council for leave to use a portion of
"Bluff Street" for depot purposes, and such permission was
granted on condition that it macadamize and keep open
as a public thoroughfare twenty feet of block 25, belonging
to it, in lieu of that portion of "Bluff Street" occupied by
the depot. In pursuance of the permission thus obtained,
the defendant's track was constructed along the space of
ground called "Bluff Street," and its depot located thereon,
and it has ever since occupied and used the same for rail-
way purposes. In 1876 Leahy and wife, the heirs at law
of the Harveys, asserted some claim to the land occupied
by the company along what is called "Bluff Street," and
asked damages for material taken by it from adjacent
ground. The defendant, as a compromise and relinquish-
ment of such claim, paid them $500 for a conveyance of
all their right, title, and interest in such land and a release
of damages. The description in the deed was so indefinite,
however, as to render uncertain the property intended to
be conveyed. In July, 1891, the defendant procured an-
other deed from the Leahy's conveying to it by definite
description all their title to the entire space of ground
between the west line of the most westerly tier of lots on
the bluff and the east line of the most easterly tier of lots
below the bluff, thus including the space on the bluff do-
nated by McLoughlin for a public promenade and the
space below the bluff called "Bluff Street."

A question subsequently arose between the plaintiff
municipality and the defendant as to the rights of the
respective parties to the use of the property included in
the Leahy deed to the defendant, and this suit was com-
menced in January, 1899. The plaintiff contends that the
property was intended to be and was dedicated to the public
by McLoughlin, and that such dedication was ratified, ap-

proved, and confirmed by the United States and the State of Oregon and Harvey and wife. The position of the defendant is that McLoughlin never made or intended to make a dedication of the property in controversy to the public; that, if he did so intend, he did not have title, and his attempted dedication was without effect; that the Harveys did not deraign title from him, but from the State of Oregon; and that they never recognized or intended to recognize any dedication to the public of the land in controversy. The decree of the court below was in favor of the plaintiff, and defendant appeals.    AFFIRMED.

For appellant there was an oral argument by *Mr. William D. Fenton*, with a brief over the names of *Mr. Fenton* and *Mr. Geo. C. Brownell*, to this effect:

I. McLoughlin had only the right of possession, and his dedication of December 2, 1850, gave no rights to the public or to any one, because it was not subsequently confirmed, and it was after the date named in the confirmatory clause of the act of Congress of September 27, 1850. The title to this land was given to the State of Oregon and it conveyed to the Harveys, so that no title was derived through McLoughlin.

Not being either the legal or equitable owner of the Oregon City Claim, McLoughlin could not make any binding dedication: Elliott, Roads (2 ed.), § 144; 9 Am. & Eng. Ency. Law (2 ed.), 29; *Gentleman* v. *Soule*, 32 Ill. 271 (83 Am. Dec. 264); *Harding* v. *Town*, 83 Ill. 501; *Gridley* v. *Hopkins*, 84 Ill. 528; *Hawthorn* v. *Meyer* (Ky.), 37 S. W. 593; *Lee* v. *Lake*, 14 Mich. 12 (90 Am. Dec. 220); *Diamond Match Co.* v. *Village of Ontonagon*, 72 Mich. 249 (40 N. W. 448); *Porter* v. *Stone*, 51 Iowa, 373; *McShane* v. *Moberly*, 79 Mo. 41; *Kansas City M. Co.* v. *Riley*, 133 Mo. 574; *Warren* v. *Brown*, 31 Neb. 8 (47 N. W. 633); *Cyr* v. *Medora*, 73 Me. 53; *Bushnell* v. *Scott*, 21 Wis. 457 (44 Am. Dec.

555); *Lawe* v. *Village of Kaukauna*, 70 Wis. 306 (35 N. W. 561); *Chapman* v. *School Dist.* Deady, 108 (Fed. Cas. No. 2,607); *Lownsdale* v. *Portland*, Deady, 1 (Fed. Cas. 8,578); *Leland* v. *Portland*, 2 Or. 46 ; *Carter* v. *Portland*, 4 Or. 339 ; *Lewis* v. *Portland*, 25 Or. 133 (22 L. R. A. 736, 42 Am. St. Rep. 772, 46 Am. & Eng. Corp. Cas. 230, 35 Pac. 256).

II. A dedication must be intended as a grant to the public, and it must be accepted either formally or by general use: Elliott, Roads, §§ 112, 117 ; 9 Am. & Eng. Ency. Law (2 ed.), 50, 57 ; 2 Smith, Munic. Corp. §§ 1281, 1500 ; *Hogue* v. *Albina*, 20 Or. 182 (25 Pac. 386); *People* v. *Kellogg*, 67 Hun, 546 ; *City of Anaheim* v. *Langenberger*, 134 Cal. 608 (66 Pac. 855); *City of Sacramento* v. *Clunie*, 120 Cal. 29, 32 (52 Pac. 45).

III. A use of ground platted as a street by private persons for purposes inconsistent with its occupation as a public way for a time beyond the statute of limitations destroys the dedication, and an unaccepted offer of ground for public use cannot be considered as open beyond that length of time : *People* v. *Reed*, 81 Cal. 70 (15 Am. St. Rep. 22); *Schmitz* v. *Germantown*, 31 Ill. App. 285; *Picori* v. *Johnson*, 56 Ill. 46; *Lakeview* v. *Le Bahn*, 120 Ill. 98 (9 N. E. 269); *Vermont* v. *Miller*, 161 Ill. 210 (43 N. E. 975); *Wayne County* v. *Miller*, 31 Mich. 447; *Gregory* v. *Knight*, 50 Mich. 61; *Coleman* v. *Railway Co.* 64 Mich. 163; *Mouat Lum. Co.* v. *Denver*, 21 Colo. 1 (40 Pac. 237); *Clements* v. *West Troy*, 10 How. Pr. 199; *Wohler* v. *Buffalo & S. L. R. Co.* 46 N. Y. 686; *Niagara Falls S. B. Co.* v. *Bachman*, 66 N. Y. 261; *People* v. *Underhill*, 144 N. Y. 316 (39 N. E. 333); *Briel* v. *Natchez*, 48 Miss. 423; *New York & L. B. R. Co.* v. *Mayor of South Amboy*, 57 N J. Law, 252 (30 Atl. 628); *Pope* v. *Union*, 18 N. J. Eq. 282; *Becker* v. *St. Charles*, 37 Mo. 13; *Meyer* v. *Graham*, 33 Neb. 566 (18 L. R. A. 146, 29 Am. St. Rep. 500, 50 N. W. 763); *In re Brooklyn Street*, 118 Pa. St. 640 (4 Am. St. Rep. 618, 12 Atl. 664); *Simplat*

v. *Dubuque*, 49 Iowa, 630; *Cambridge* v. *Cook*, 97 Iowa, 599 (66 N. W. 884); *Webber* v. *Chapman*, 42 N. H. 326 (80 Am. Dec. 111); *Meier* v. *Portland Cable Ry. Co.* 16 Or. 500 (1 L. R. A. 856, 19 Pac. 610).

IV. Plaintiff is estopped from claiming the ground on which the tracks and depot and other improvements now stand; and, if not estopped, the statute of limitations has fully run: *Foster* v. *Bigelow*, 24 Iowa, 379; *Bullis* v. *Noble*, 36 Iowa, 618; *Davies* v. *Huebner*, 45 Iowa, 574; *Simplat* v. *Dubuque*, 49 Iowa, 630; *Orr* v. *O'Brien*, 77 Iowa, 253 (14 Am. St. Rep. 277); *Smith* v. *City of Osage*, 80 Iowa, 84 (8 L. R. A. 633, 45 N. W. 404); *Smith* v. *Gorrell*, 81 Iowa, 218; *City of Davenport* v. *Boyd*, 109 Iowa, 248 (77 Am. St. Rep. 736, 80 N. W. 314); *Hamilton* v. *State*, 106 Ind. 361; *Collett* v. *Vanderburgh Co. Comrs.* 119 Ind. 27 (4 L. R. A. 321, 21 N. E. 329); *Railway Co.* v. *City of Joliet*, 79 Ill. 25; *Ruggles* v. *People*, 91 Ill. 257; *Steel* v. *Portland*, 23 Or. 176 (31 Pac. 479); *Dundon* v. *Grady*, 30 Or. 333 (47 Pac. 915).

For respondent there was an oral argument by *Mr. Franklin T. Griffith*, with a brief over the names of *A. S. Dresser*, City Attorney, and *Griffith & Hedges* to this effect:

(1) The McLoughlin plat and dedication having been recognized and adopted (as it was) by Harvey, became the latter's plat and dedication, and is binding on his heirs and their assigns, even though McLoughlin had no title: 9 Am. & Eng. Ency. Law (2 ed.), 58; *Leland* v. *Portland*, 2 Or. 47, 49; *Carter* v. *Portland*, 4 Or. 340, 344; *Brown* v. *Manning*, 6 Ohio, 298 (27 Am. Dec. 255).

(2) Harvey's sales by reference to the McLoughlin plat constituted an irrevocable dedication to the public of all public places thereon shown: *Lownsdale* v. *Portland*, 1 Or. 397; *Portland* v. *Whittle*, 3 Or. 126; *Carter* v. *Portland*, 4 Or. 339; *Meier* v. *Portland Cable Ry. Co.* 16 Or. 500 (1 L. R. A. 856, 19 Pac. 610); *Hicklin* v. *McClear*, 18 Or. 126 (22 Pac.

1057); *Hogue* v. *Albina*, 20 Or. 182 (10 L. R. A. 673, 25 Pac. 386); *Lewis* v. *Portland*, 25 Or. 133 (25 L. R. A. 736, 42 Am. St. Rep. 772, 35 Pac. 256, 46 Am. & Eng. Corp. Cas. 230); *Schooling* v. *Harrisburg*, 42 Or. 494 (71 Pac. 605, 9 Munic. Corp. Cas. 705); *Schenley* v. *Commonwealth*, 36 Pa. St. 29 (78 Am. Dec. 359); *City of Dubuque* v. *Maloney*, 9 Iowa, 451 (74 Am. Dec. 358); *Abbott* v. *Mills*, 3 *Vt.* 521 (23 Am. Dec. 222); *Livingston* v. *Mayor*, 8 Wend. 85 (22 Am. Dec. 622); *Bissell* v. *New York Cent. R. Co.* 23 N. Y. 66; *Gregory* v. *Lincoln*, 13 Neb. 352; *Florentine* v. *Barton*, 69 U. S. (2 Wall.) 57; *Pope* v. *Union*, 18 N. J. Eq. 282; *Rowan* v. *Portland*, 8 B. Mon. 232; *Lamar County* v. *Clements*, 49 Tex. 354; *Evansville* v. *Evans*, 37 Ind. 233; *Denver* v. *Clements*, 3 Colo. 472; *Hanson* v. *Eastman*, 21 Minn. 509. This is particularly true as to public parks: *Steel* v. *Portland*, 23 Or. 176 (31 Pac. 479); *Commonwealth* v. *Beaver*, 171 Pa. St. 542; *Archer* v. *Salinas*, 93 Cal. 43 (16 L. R. A. 145, 28 Pac. 840).

(3) Where the effect of holding an unmarked strip of land to be private property would be to leave a large number of streets without connection with the rest of the city, and to prevent access by the inhabitants of one part of the city to the other part without passing over private property, and such strip is left in a place where a street would naturally come under the general scheme of the plat, and is necessary to the full enjoyment of lots fronting on it, which will otherwise be left without access to a public road, a dedication of the strip is necessarily implied, which is complete without any formal acceptance by the public authorities: *Parrish* v. *Stephens*, 1 Or. 60; *Carter* v. *Portland*, 4 Or. 339; *Hicklin* v. *McClear*, 18 Or. 126 (22 Pac. 1057); *Commonwealth* v. *Moorehead*, 118 Pa. St. 344 (12 Atl. 424, 4 Am. St. Rep. 599); *Hanson* v. *Eastman*, 21 Minn. 5C9; *Buschmann* v. *St. Louis*, 121 Mo. 523 (26 S. W. 687); *Indianapolis* v. *Kingsbury*, 101 Ind. 200 (51 Am. Rep. 749); *Rex* v. *Lloyd*, 1 Camp. 260; *Bartlett* v. *Bangor*, 67 Me. 460;

*Hitchcock* v. *Oberlin,* 46 Kan. 90 (26 Pac. 466); *Arnold* v. *Weiker,* 55 Kan. 510 (40 Pac. 901, 903); *Green* v. *Elliott,* 86 Ind. 53; *People* v. *Davidson,* 21 Pac. 538; *Los Angeles Cem. Assoc.* v. *Los Angeles,* 32 Pac. 240; *San Francisco* v. *Burr,* 36 Pac. 771; *Stone* v. *Brooks,* 35 Cal. 489; *Archer* v. *Salinas,* 93 Cal. 43 (16 L. R. A. 145, 28 Pac. 840); *Hall* v. *Kauffman,* 106 Cal. 451 (39 Pac. 756).

(4) Title to a public street cannot be acquired by adverse possession, for the statute of limitations does not run against a municipal corporation in respect to its squares or other places held by it solely for public purposes: *Giffen* v. *City of Olathe,* 44 Kan. 342 (24 Pac. 470); *Hoadley* v. *San Francisco,* 50 Cal. 265; *City of Visalia* v. *Jacob,* 65 Cal. 443; *Town of San Leandro* v. *Le Breton,* 72 Cal. 170 (13 Pac. 405); *Mills* v. *Los Angeles,* 90 Cal. 522 (27 Pac. 354); *Orena* v. *Santa Barbara,* 91 Cal. 261 (28 Pac. 268); *Louisiana Ice Mfg. Co.* v. *New Orleans,* 43 La. Ann. 217 (9 So. 21); *Territory* v. *Deegan,* 3 Mont. 82, 87; *Sims* v. *Frankfort,* 79 Ind. 446; *Cheek* v. *Aurora,* 92 Ind. 107; *Wolfe* v. *Town of Sullivan,* 133 Ind. 331 (32 N. E. 1017); *St. Louis* v. *Missouri Pac. Ry. Co.* 114 Mo. 13 (21 S. W. 202); *Reed* v. *Birmingham,* 92 Ala. 339 (9 So. 161); *Webb* v. *City of Demopolis,* 95 Ala. 116 (21 L. R. A. 62, 13 So. 289); *Harn* v. *Dadeville,* 100 Ala. 199 (14 So. 9); *Kopp* v. *Utton,* 101 Pa. St. 27; *Commonwealth* v. *Moorehead,* 118 Pa. St. 344 (4 Am. St. Rep. 599, 12 Atl. 424); *Vicksburg* v. *Marshall,* 59 Miss. 563; *Reilly* v. *City of Racine,* 51 Wis. 526 (8 N. W. 417); *Childs* v. *Nelson,* 69 Wis. 125 (33 N. W. 587); *Nicolai* v. *Davis,* 91 Wis. 370 (64 N. W. 1001); *Yates* v. *Warrenton,* 84 Va. 337 (10 Am. St. Rep. 860, 4 S. E. 818); *Simms* v. *Chattanooga,* 70 Tenn. (2 Lea) 694.

(5) A mere permissive possession, however long continued, can never ripen into a title by adverse possession : 1 Am. & Eng. Ency. Law (2 ed.), 794–796; *Springer* v. *Young,* 14 Or. 280 (12 Pac. 400); *Anderson* v. *McCormick,*

18 Or. 301 (22 Pac. 1062); *Curtis* v. *La Grande Water Co.* 20 Or. 34 (23 Pac. 808, 10 L. R. A. 484); *Abraham* v. *Owens*, 20 Or. 511 (26 Pac. 1112).

(6) The defendant having constructed its railroad upon the street after obtaining permission from the city, has never had an adverse possession, and has at best only a mere easement: B. & C. Comp. § 5078; *Narron* v. *Wilmington & W. R. Co.* 122 N. C. 856 (40 L. R. A. 415, 29 S. E. 356); *Indianapolis R. Co.* v. *Ross*, 47 Ind. 25; *Texas & Pac. R. Co.* v. *Scott*, 77 Fed. 726 (37 L. R. A. 94, 23 C. C. A. 424); *Oregon R. & Nav. Co.* v. *Oregon R. E. Co.* 10 Or. 444; *Curtis* v. *La Grande Water Co.* 20 Or. 34 (10 L. R. A. 484).

(7) Even if the original occupation and possession by the defendant of the strip in controversy was sufficient to ripen into title by adverse possession, the subsequent recognition of the city's title, before the statute had run, by asking the council for leave to locate defendant's depot upon Bluff Street (the land in controversy), and the granting of such request by the city, estops the defendant from now claiming that said strip is not a street, or that defendant's possession has been adverse to the city: *City of St. Paul* v. *Chicago, M. & St. P. Ry. Co.* 63 Minn. 330 (63 N. W. 267, 65 N. W. 649); *Hull* v. *Chicago, B. & Q. Ry. Co.* 21 Neb. 371 (32 N. W. 162); *Ingersoll* v. *Lewis*, 11 Pa. St. 212 (51 Am. Dec. 536); 1 Am. & Eng. Ency. Law (2 ed.), 838.

MR. JUSTICE BEAN, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. McLoughlin never acquired title to the land in question, but his map or plat of Oregon City was recognized by the Government of the United States and the State of Oregon in confirming title to the purchasers from him, and by Harvey and wife after they had acquired the title, by selling and disposing of lots and blocks as laid out and platted thereon. It is well settled that, where the owner

of land exhibits a map or plat of a town thereon, showing lots, blocks, streets, and other public ways, and sells and makes deeds of conveyance by reference thereto, he thereby dedicates to the public the streets and public places shown thereon: *Leland* v. *Portland*, 2 Or. 46; *Carter* v. *Portland*, 4 Or. 339; *Meier* v. *Portland Cable R. Co.* 16 Or. 500 (19 Pac. 610, 1 L. R. A. 856); *Hogue* v. *Albina*, 20 Or. 182 (25 Pac. 386, 10 L. R. A. 673); *Steel* v. *Portland*, 23 Or. 176 (31 Pac. 479). When, therefore, the Harveys, after acquiring title from the State, without making any change or alteration in the McLoughlin map, sold and conveyed lots with reference thereto, they thereby ratified, approved, and dedicated to the public the streets, alleys, and public places shown thereon, as completely and fully as if they had themselves made and formally acknowledged the map.

2. The question, then, is whether the strip of land in controversy was, as shown by the McLoughlin map, dedicated to the public or reserved as private property. As to that portion on top of the bluff the case is clear. In the donation as acknowledged by McLoughlin and recorded it is stated that it "is donated for a promenade for the inhabitants of Oregon City," and on the map as made and filed by him and subsequently adopted by the Harveys that it is "donated for a public promenade." There is therefore no room for controversy as to the intention of the donors so far as this particular part of land in controversy is concerned. As to that below the bluff, the case is not so clear. In our opinion, however, it is very apparent that it was designed and intended to be dedicated to the public as a street or public way. It extends almost through the town north and south, dividing it into two parts, and is parallel with, and one tier of blocks distant from, Main Street. It is not inclosed by lines at either end, nor where it is intersected by cross-streets or alleys. In short, it appears upon the map in such a manner as to be entirely in-

consistent with any other theory than that it was intended as a street or public way, notwithstanding its easterly line follows the irregular course of the bluff, making a street of varying width, and that there appears on the map no word or mark which can be construed as naming the tract as a street. The cross-streets and alleys all open into it, and four lots on each block, from 20 to 29, inclusive, front upon it in the same manner as lots in other portions of the town front upon their streets. Two of the inside lots of each of these blocks are otherwise inaccessible from the public street. Unless it was intended as a street or way, there would be no connection between the upper and lower town, except over private property, or by a roundabout course. The fact that it is not named as a street is by no means conclusive evidence of a lack of intention to donate it as such: *Arnold* v. *Weiker*, 55 Kan. 510 (40 Pac. 901); *Sanborn* v. *Chicago & N. W. R. Co.* 16 Wis. 21; *Weisbrod* v. *Chicago & N. W. R. Co.* 21 Wis. 609; *Indianapolis* v. *Kingsbury*, 101 Ind. 200 (51 Am. Rep. 749). Indeed, the presumption is that, as it was not expressly reserved for private purposes, it was intended for public use. "If the owner of the soil," says Mr. Angell, "throws open a passage, and neither marks, by any visible distinction, that he means to preserve all his rights over it, nor exclude persons from passing through it, by positive prohibition, he shall be presumed to have dedicated it to the public": Angell, Highways (3 ed.), § 143. And Mr. Elliott says: "We think it a safe general rule to resolve doubts in such case against the donor, and, within reasonable limits, to construe the dedication so as to benefit the public, rather than the donor. Naturally, the presumption is that one who records a plat, and marks upon it spaces that appear to form no part of any platted lots, dedicates the land represented by the spaces thus excluded to a public use": Elliott, Roads &

Streets (2d ed.), § 119. It must be presumed, therefore, that it was the intention of McLoughlin and the Harveys to donate the strip of land in controversy to the public. This presumption is confirmed by the fact that the space below the bluff immediately south of and adjoining that in controversy and the space between Water Street and the river are expressly reserved as private property, thus indicating an intention to donate all other vacant spaces shown on the map to the public. This seems also to have been the understanding of Harvey, because he stated to the witnesses Apperson and Ganong that the space below the bluff was a public highway.

3. It may be argued that neither the dedication of the promenade on the bluff nor that of the strip of land below it had been accepted by the city prior to the execution of the deeds to the defendant from the Leahys, because the former has never been improved nor the latter opened to wagon and carriage travel lengthwise. No formal acceptance of the dedication was necessary. The record shows that ever since the town has been laid out the public have uninterruptedly used the upper tract for a promenade or pleasure ground, and the lower as a passageway to reach stairs or steps which the citizens of the town have constructed, leading from the lower to the upper town, and that the plaintiff municipality has exercised authority over the property by passing resolutions and ordinances concerning the same and by granting a right of way to the defendant and permitting it to place its depot thereon. The fact that the city has not heretofore deemed it wise or prudent to spend money in improving or beautifying the promenade or in removing the disintegrated rock below the bluff so that the space adjoining it can be used for wagon and carriage travel, cannot be taken as evidence of a failure to accept the dedication. The dedication is binding on the donors and their successors in interest, and can only be

revoked by them when the purpose for which it was made has entirely failed. "It would be unreasonable and unjust," says Mr. Chief Justice Thayer, "to allow a town proprietor to revoke the dedication of any street indicated upon the plat of the town for the reason that the corporate authorities of the town had not specially accepted it as a street, nor the public actually entered upon and used it as such. The proprietor proposed to the public in the outset that the ground represented as the street should forever remain open to be used for that purpose, and upon a sale of lots and blocks by reference to such plats he precluded himself from making any other or different disposition of it": *Meier* v. *Portland Cable R. Co.* 16 Or. 500, 505 (19 Pac. 613, 1 L. R. A. 856). We are of the opinion, therefore, that there was a valid dedication of the land in controversy to the public by the Harveys and their predecessors in interest—the upper part for a public promenade, and the lower for a street or way; and that the rights of the defendant acquired from the Leahys are subject thereto.

4. Nor has the defendant acquired a title to the property, or any part thereof, by adverse possession. Its entry was by permission and acquiescence of the city, and, having so entered and occupied, it cannot claim that its occupancy has been adverse to the city, or that it is now entitled to exclude the public from the use of the property: *Indianapolis R. Co.* v. *Ross*, 47 Ind. 25.

By the decree of the court below, however, the defendant is confined in its use of the street to that portion now occupied by its "main track, depot building, roadbed, water tank, switches, and side tracks." This, in effect, determines its rights under the ordinances of the city—a question not presented by the pleadings nor discussed in the briefs. There never having been, so far as the record discloses, any dispute between the city and the defendant on this point, it would be manifestly unwise to attempt to

construe the ordinances or to define the defendant's rights thereunder at this time. The decree of the court below will therefore be modified in this respect, and in all others affirmed.          MODIFIED.