Argued July 17, modified October 6, 1914.

## CHASE v. OREGON CITY.*

(143 Pac. 1111.)

Dedication—Title of Dedicator—Ratification.

1.  A dedication is void which is made before the dedicator acquires title to the property, unless he ratifies it after acquiring title.

Dedication—Acts Constituting—Reference to Map.

2.  Where the owners of a town plat sold lots by reference to a map which showed certain lots as extending to the edge of a bluff, while between the adjoining blocks and the bluff was left a strip dedicated as a promenade, and an attempted dedication by a former claimant of the land, who prepared the map, named a minimum, but not a maximum, size of lots, the lots first mentioned extended to the bluff; and, though a more accurate survey, to which no reference was

*On the question whether leaving a blank in a plat is a dedication, see notes in 23 L. R. A. (N. S.) 809.                    REPORTER.

made in the conveyances, showed that with the lots in question of the same size as the adjoining lots, a space would be left between them and the bluff, such space was not dedicated to the public.

[As to dedication by maps and plats, see note in 10 Am. St. Rep. 189.]

Dedication—Acts Constituting—Reference to Map.

3.   Where the owners of a town plat sold lots with reference to a map, which showed the slope of a bluff and a strip at the foot of the bluff unmarked, while other portions were marked as reserved for private use, the unmarked strip was dedicated as a street.

From Clackamas: HENRY L. BENSON, Judge.

This is a suit by Sarah A. Chase against the city of Oregon City and the Oregon Bridge & Construction Company.   In the Circuit Court there was a decree for plaintiff and defendants appeal.   The facts are set forth in the opinion of the court.        MODIFIED.

For appellants there was a brief over the names of *Mr. Christian Schuebel, Mr. Livy Stipp* and *Mr. W. M. Stone,* with oral arguments by *Mr. Schuebel* and *Mr. Stipp.*

For respondent there was a brief over the names of *Mr. Joseph E. Hedges* and *Messrs. C. D. & D. C. Latourette,* with oral arguments by *Mr. Hedges* and *Mr. Charles D. Latourette.*

Department 2.   MR. JUSTICE McNARY delivered the opinion of the court.

The purpose of this suit is to enjoin the defendants from establishing and maintaining a perpetual trespass by the construction of an elevator landing, to be used in connection with the transportation of passengers between the business and residential sections of Oregon City.   The only problem presented for our solution concerns the ownership of a strip of land lying between lots 3 and 4 in block 34, and the right of way

of the Oregon and California Railroad Company to the westward. Two distinct planes, separated by a precipitous bluff about 100 feet in height, run north and south through the city. Between the edge of the bluff and block 33 and a tier of blocks lying southward thereof is a strip of land known as the "promenade," the title to which was adjudged to reside in the city, in the case of *Oregon City* v. *Oregon & California R. R. Co.*, 44 Or. 165 (74 Pac. 924). Plaintiff's title to the disputed land was deraigned from the heirs of Dr. John McLoughlin. No question is made concerning the chain of plaintiff's title, providing the heirs of Dr. McLoughlin had any interest to convey. In early pioneer days, Dr. John McLoughlin settled upon what was afterward known as the "Oregon City claim" and in 1844 executed, and in 1851 caused to be recorded, a map of the town of Oregon City, and thereafter conveyed numerous lots by reference to the plat. Dr. McLoughlin had no title to the property by reason of his alienage. That the title of the purchasers could not be questioned, the Congress of the United States, in 1850, passed an act commonly known as the "Donation Act," confirming title in the grantees who had purchased property from Dr. McLoughlin prior to the spring of 1849: Laws of the United States Relating to Oregon, Section 12 (page 53), L. O. L.

In 1851 the legislative assembly of Oregon took similar action by confirming the title in the donees of Dr. McLoughlin. The Donation Act of 1850 provided that the Oregon City claim, excepting the Abernethy Island, should be set apart and be at the disposal of the legislative assembly, and that the proceeds accruing from the sale of the property be applied to the establishment of a university, thereafter to be located and designated.

72 Or.—34

At its legislative session in 1862, the state assembly accepted the government's grant to the Oregon City claim, and contemporaneously conveyed the title to the heirs of Dr. John McLoughlin. The Donation Act, *supra,* further specified that the Surveyor General should certify the record to the Commissioner of the General Land Office. This provision doubtlessly prompted Mr. J. B. Preston, the Surveyor General, to prepare in the fall of 1851 what is known as the Preston plat. We think there can be no one found who will doubt the statement that the Preston map is a more accurate delineation of the physical aspects of Oregon City than the McLoughlin map; this probably being so by reason of the better skill and painstaking care of the Surveyor General, and the superior fitness of his instruments. In the plat filed by Dr. McLoughlin, the bluff appears to obtrude upon the whole of block 34, leaving no space indicative of a street or "promenade," whereas, in respect to block 33 and the blocks lying immediately to the southward, Dr. McLoughlin had this to say:

"The space between the edge of the bluff and blocks numbered thirty-three (33), etc., is donated for a promenade for the inhabitants of Oregon City."

Beyond question, it was thought by Dr. McLoughlin and his surveyor that all the lots in block 34 were shortened by the bluff, this being due either to the want of accuracy in the survey or in the preparation of the plat of the city. In the Preston map, a strip of land varying from 9 to 21 feet in width is shown to subsist between the edge of the bluff and lots 3 and 4 in block 34.

1. Counsel for defendants argue with much learning that, before any of the certificates were issued which

formed a basis for the patents, the Preston survey was completed and the plat made therefrom, and that all patents were issued with reference to the Preston plat and survey, and that the dedication of the city occurred when the general government issued the patents by virtue of the Donation Act. Undeniably, as a legal precept, a dedication is void which is made before the dedicator acquires title to the property, unless he ratifies it after acquiring title: 13 Cyc. 443.

2. However, this precise point was presented to this court in the case of *Oregon City* v. *Oregon & California R. R. Co.,* 44 Or. 165 (74 Pac. 924), on which occasion, Mr. Justice R. S. Bean, speaking for the court, said:

"In October, 1862, the state legislature formally accepted the government's grant of the 'Oregon City claim' for university purposes, and at the same time conveyed and confirmed title thereto to Daniel Harvey and his wife, Eloise Harvey, the heirs and legatees of Dr. McLoughlin, for the consideration of $1,000: Gen. Laws 1862, p. 90. After thus becoming the owners of the property, the Harveys did not make a new map or plat of Oregon City, but sold and conveyed by deed lots and blocks therein by reference to the map or plat made and filed by McLoughlin in 1851, and from the date of the filing of such map to the present the McLoughlin map has been used and considered as the only plat of the city. * * McLoughlin never acquired title to the land in question, but his map or plat of Oregon City was recognized by the government of the United States and the State of Oregon in confirming title to the purchasers from him, and by Harvey and wife after they had acquired the title, by selling and disposing of lots and blocks as laid out and platted thereon. * * When, therefore, the Harveys, after acquiring title from the state, without making any change or alteration in the McLoughlin map, sold and conveyed lots with reference thereto, they thereby ratified, ap-

proved, and dedicated to the public the streets, alleys and public places shown thereon as completely and fully as if they had themselves made and formally acknowledged the map.''

Thus it will be seen that the McLoughlin map must be looked to as the sole interpreter of the intention of the dedicator, as well as those holding title through the medium of the State of Oregon. In the dedication made by Dr. McLoughlin, we observe this statement:

''All lots in that part of the town surveyed by Jesse Applegate, are at least sixty-six (66) feet front and one hundred (100) feet back.''

As explanatory thereof, it is worth while to remark that this pioneer civil engineer surveyed all the town lying between Washington Street and the Willamette River, in which zone is located the property embraced by this litigation. We find no statement in the dedication limiting the number of feet that may be in a block, and for that reason it was the apparent intent of the dedicator that each lot should be as large as indicated by its boundary lines.

It seems clear to us that Dr. McLoughlin and his successors in interest both supposed and desired to include within lots 1, 2, 3 and 4 of block 34 all the land lying between High Street fronting the block and the top of the bluff to the westward thereof.

3. In our opinion, there has been no dedication to the public of the land lying between block 34 and the crest of the bluff, and therefore the legal title and ownership thereof resides in plaintiff. But the sloping strip of land lying between the top or crest of the bluff and the easterly boundary of the right of way of the Oregon & California Railroad Company, where it passes under the bluff west of block 34, we hold, follow-

ing the reasoning announced in the case of *Oregon City* v. *Oregon & California R. R. Co.*, belongs to the city as a part of what is known as "Bluff" Street.

Let the decree of the lower court be modified conformably to this opinion.     MODIFIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE BEAN concur.

---

Motion to dismiss appeal allowed October 6, 1914.