[No. 21421. Department Two. March 11, 1929.]

HERMON S. FRYE et al., Appellants, v. KING COUNTY, et al., Respondents.[1]

*Frank E. Hammond, Tucker, Hyland & Elvidge, Shorett, McLaren & Shorett,* and *E. R. Taylor,* for appellants.

*Ewing D. Colvin, Harry A. Rhodes, Wingate & Benz* and *Emil N. Stenberg,* for respondents.

FRENCH, J.—For many years prior to 1900, one Edgar Battle and one Claude C. Ramsey were the owners of Lots 1 and 2, of Section 34, Township 26 North, Range 4 East W. M., King county, Washington. This land bordered on Lake Washington, and on the 17th day of October, 1903, Mr. Battle and Mr. Ramsey, as upland owners, made application to purchase the second class shore lands lying in front of Lots 1 and 2, and a contract was issued to them whereby the state of Washington agreed to sell such shore lands, the

[1]Reported in 275 Pac. 547.

payments to be made in installments. The contract provided for forfeiture in case of default.

Thereafter, in April, 1906, the Seaboard Security Company caused to be surveyed and staked the Lake Shore View Addition to the city of Seattle, the description and dedication of such plat reading as follows:

"This plat of 'Lake Shore View Addition to the City of Seattle' embraces all of the following described tract of land to-wit: Beginning at the $\frac{1}{4}$ corner between sections 27 and 34 Tp. 26 N., R. 4 E., W. M., thence S. 0° 12' E. 2619.44 Ft. to the center of section 34 Tp. 26 N. R. 4 E. of W. M., thence N. 89° 54' E. 1571.36 Ft., thence N. 22° 51' E. 456.20 Ft., thence N. 11° 18' E. 210.30 Ft., thence N. 13° 09' W. 883.60 Ft., thence N. 18° 44' W. 739.00 Ft., thence N. 17° 14' W. 434.00 Ft., thence N. 89° 18' W. 1231.78 Ft., to the place of beginning."

"DEDICATION

"Know all men by these presents, That we, the undersigned, Seaboard Security Company, a corporation organized and doing business at the city of Seattle, in said state, being the owners in fee simple of the land above described and embraced in the plat of 'Lake Shore View Addition to city of Seattle' do hereby declare said plat and do hereby dedicate to the use of the public forever the streets and avenues thereon shown.

"In Witness Whereof said Company has caused these presents to be executed by its President and Secretary thereunto duly authorized and its corporate seal thereunto affixed.     SEABOARD SECURITY COMPANY,

"By F. F. Mead, Its President,

"And Paul C. Murphy, Its Secretary."

On the 7th day of May, said Battle and Ramsey deeded to the Seaboard Security Company Lots 1 and 2, and this deed was duly recorded on the 8th day of May. On the 9th day of March, 1906, the plat was duly filed and recorded. On the 8th day of May, 1906, Battle and Ramsey assigned to the Seaboard Security Company the contract they held for the purchase of

the shore lands from the state of Washington, and on July 7, 1906, a deed from the state of Washington to the Seaboard Security Company was issued conveying such lands to the Seaboard Security Company. The shore lands lie wholly without the metes and bounds description of the plat, as above set out. The Seattle and International Railway Company's right of way approximately follows the shore of the lake along the entire eastern portion of the plat, and immediately west of the railway right of way is Lake Shore Boulevard, and all of the east and west streets in the plat come into this Lake Shore Boulevard, which runs generally north and south and follows the right of way of the railroad through the entire plat.

Shortly after the land had been platted by the Seaboard Security Company, it was placed on the market and has been sold to a large number of individuals. The lines of the plat extend to the east of the railway right of way, and the lots there are numbered and also the blocks set out. All shore lands, however, that were sold, were conveyed by separate description, and there was never any attempt to sell or convey any shore land by lot and block. After disposing of the various tracts, as set forth in this plat, and the shore lands fronting on the various lots, the Seaboard Security Company apparently went out of business many years ago, but, in the fall of 1926, the appellants, Frye, Hammond and Robison purchased certain shore lands from the Seaboard Security Company, these shore lands generally being what would, on the plat, correspond to the ends of the streets if the streets were extended across the shore lands. The metes and bounds description of the land included in the plat does not include all of government Lot 2, and the appellants Parker and Godfrey claim to own, by right of purchase, that portion of government Lot 2 lying east

of the easterly metes and bounds description on the plat. A controversy arising between the respective parties as to their rights to the land involved, and King county claiming that the streets extended to and across the shore lands by reason of the dedication above set out, and certain upland owners intervening, the matter came on for trial in the superior court of King county, and the lower court held that the appellants had no right, title or interest in or to any part of the land in question. This appeal follows.

█ It is the well settled law that, in construing a plat, the intention of the dedicator controls. The rule has been stated to be: "The intention of the owner is the very essence of every dedication." *City of Palmetto v. Katsch,* 86 Fla. 506, 98 South. 352.

See, also, *McCoy v. Thompson,* 84 Ore. 141, 164 Pac. 589; *Van Wieren v. Macatawa Resort Co.,* 235 Mich. 606, 209 N. W. 825; *East Birmingham Realty Co. v. Birmingham Machine & Foundry Co.,* 160 Ala. 461, 49 South. 448; *Ft. Smith & Van Buren Bridge Dist. v. Scott,* 111 Ark. 449, 163 S. W. 1137; *Ramstad v. Carr,* 31 N. D. 504, 154 N. W. 195; *Humphrey v. Krutz,* 77 Wash. 152, 137 Pac. 806.

But this intention must be adduced from the plat itself, where possible, as that furnishes the best evidence thereof.

In *Hanson v. Proffer,* 23 Idaho 705, 132 Pac. 573, the court held in the syllabus:

"The first essential of a dedication is the intention of the owner of the land to dedicate it, and such intention is usually shown by the plat. The contrary intention cannot be shown by something hidden in the mind of the land owner."

In *Minton v. Smith,* 102 Okl. 79, 227 Pac. 75, the court, quoting 9 Am. & Eng. Ency. Law, said:

" 'The intention of the owner in making the plat is to be ascertained from all the marks and lines appear-

ing thereon, and, if possible, such an interpretation should be followed as will give effect to all lines and statement.' "

In *Melin v. Community Consolidated School Dist., No. 76,* 312 Ill. 376, 144 N. E. 13, the court said: "The words on the plat indicate the intention of the dedicator."

And in *McCoy v. Thompson, supra,* it was said:

"The intent of the dedicator is the foundation and life of all dedications, and the intent must be manifested. Where the dedication is statutory in character, the plat and writing generally furnish the means by which to ascertain the intent, and these, like all other writings, *must be construed by the terms contained in them."* (Italics ours.)

It is true, of course, that, where the plat is ambiguous, parol testimony as to contemporaneous and subsequent acts of the parties will sometimes be received in arriving at the dedicator's intent, but in this case there is no claim that the plat is in any way ambiguous, so that it must be determined from a consideration of the plat itself and of the descriptions and dedicatory language contained therein, whether there was any intention to dedicate the streets lying east of the easterly metes and bounds of the property platted, or east of the upland contained in Lots 1 and 2.

One who does not own either the legal or equitable title to land cannot dedicate.

In *Cook v. Hensler,* 57 Wash. 392, 107 Pac. 178, this court held: "It is fundamental that title is essential to the dedicator of land, . . ."

One who owns an equitable estate may make a dedication, and that rule is recognized in *Meacham v. Seattle,* 45 Wash. 380, 88 Pac. 628. A void dedication may be ratified by the dedicator, but the lower court expressly found in this case that there was no element of estoppel, so that the cases which are based on rati-

fication and estoppel have no application here. That one cannot dedicate property which he does not own, and that, in the absence of estoppel, such attempted dedication does not operate on after-acquired title, seems to be well settled. *Rand McNally & Co. v. Chicago,* 216 Ill. App. 510; *Mills v. Dawson,* 197 Ky. 518, 247 S. W. 764; *Chase v. Oregon City,* 72 Ore. 527, 143 Pac. 1111; 8 R. C. L., 885; 13 R. C. L., 23; 8 C. J. 45.

It must be remembered that, at the time of this dedication, the dedicator or its predecessor in interest was purchasing the shore lands from the state of Washington under an executory, forfeitable contract, and such contract vests no element of title either legal or equitable. *Schaefer v. Gregory Co.,* 112 Wash. 408, 192 Pac. 968; *Ashford v. Reese,* 132 Wash. 649, 233 Pac. 29. So that it becomes pertinent to inquire as to whether or not this court can say that the dedicator did, or intended to, dedicate streets lying east of the easterly portion of Lots 1 and 2, the same being shore lands, the dedicator at that time having no vestige of title, either legal or equitable, thereto.

In *Burleson v. Hamilton,* 213 Ala. 198, 104 South. 253, it was said:

"Dedication is an affirmative act, and must be shown by affirmative evidence or its equivalent. If the acts and declarations of the owner are equivocal, they are insufficient to establish a dedication. *Florence v. Florence Land Co.,* 204 Ala. 175, 85 South. 516; 18 C. J. 53. The intent to dedicate to the public use must be shown by unequivocal acts upon which the public has a right to rely. *Denver v. Clements,* 3 Colo. 486. An intent hidden away in the owner's mind will not suffice. 18 C. J. 54."

It was contended in that case that the owner dedicated, as a highway, certain strips, unmarked on the plat, although within the description (and in this case it should be remembered that the shore lands which

it is claimed were street ends, are both unmarked on the plat and outside the legal description), but the court held that there was not sufficient evidence of the intention to dedicate, and concluded:

" 'If all that appears upon the face of the plat is a blank space, and there is nothing to show that the land covered by it has been devoted to a public use, it can not be held from the face of the plat alone that the owner intended by the recording of the plat to devote the premises represented by the blank space upon the plat to the public use.' 18 C. J. 61, note 36; 18 C. J. 65, § 31. There is no sufficient evidence of a dedication by plat."

To constitute a dedication, either express or implied, there must be an intention to dedicate on the owner's part. A dedication being a voluntary donation, is not presumed; but the clearest intention to make a dedication must be shown by the party alleging it. See *Attorney General v. Lakeview Land Co.*, 143 Ala. 291.

There are numerous authorities sustaining this rule, cited in the notes to *Stover v. Steffey*, 115 Md. 524, 81 Atl. 33, 37 L. R. A. (N. S.) 856.

In the instant case, the express language of the dedication clause is of "the streets and avenues" shown upon the plat of the land "above described," of which the plattor was the owner "in fee simple," which language on the plat itself seriously negatives any intention to make any dedication without the boundaries of Lots 1 and 2 of section 34.

An examination of the plat discloses that all of the east and west streets on this plat are on the water end, definitely closed by three lines, the east line of the railroad right of way, the easterly metes and bounds description line traced on the plat, and the approximate sixteen-foot water line, and the usual effect of enclosing an area on the map which would otherwise

appear as a street is to indicate an intent to reserve the enclosed area from dedication.

A case particularly pertinent to this phase of the situation is *Mt. Vernon v. Young,* 124 Iowa 517, 100 N. W., 694, where the court said:

"While these and perhaps other, matters upon the face of the map have some tendency to support the appellant's claim, we are of the opinion that the plat as a whole does not afford satisfactory evidence of the alleged dedication. On the contrary, it seems to afford affirmative proof of the proprietor's intent to reserve this particular tract to his own use. *It is not named or otherwise expressly designated as a street.*" (Italics ours.)

In the instant case, the language just quoted appears particularly applicable, for the reason that, at no place on the map below the closing lines, are there any names of the streets or anything to indicate an intention to dedicate.

An interesting case bearing upon undesignated spaces on a plat, is *Poole v. Lake Forest,* 238 Ill. 305, 87 N. E. 320, where the court stated:

"There is nothing on the face of the plat offered in evidence in this case from which an intention to dedicate the premises in question to the public can be claimed. If the trustee of the Lake Forest Association had desired to dedicate this beach strip to the public for a highway or a park along the beach, it is reasonable to suppose that he would have so designated it upon the plat."

As to all of the land included in Lots 1 and 2 of section 34, the same being the upland purchased by the Seaboard Security Company, and to which it obtained title by deed dated May 7, 1906, we think that an examination of the plat, purporting, as it does on the map itself, to make lots and blocks extending to the shore line, shows a clear intention to include within the plat all of such land. As to the shore land to which

the dedicator had no vestige of title, either legal or equitable, at the time of making the plat, we think it is clearly apparent, not only that there was no intention to dedicate, but that, under the doctrine of the cases above cited, there was no power to dedicate; and the trial court having expressly found that there was no estoppel, the title to such shore lands still remained in the record owners.

Reversed, with instruction to the lower court to enter a judgment in accordance with this opinion.

FULLERTON, PARKER, and MAIN, JJ., concur.