# PORTLAND RY., L. & P. CO. v. OREGON CITY.

### (166 Pac. 932.)

**Dedication—Evidence—Weight and Sufficiency.**

1. Evidence *held* not to establish dedication of a street by user.

**Dedication—Acquiescence in Public Use.**

2. The permission by the owner of spasmodic or occasional use by the traveling public of uninclosed land is not sufficient to indicate an intent to dedicate the property to public use.

**Dedication—Acts Constituting.**

3. That a city has passed ordinances referring to land that would be part of street, if extended, as part of that street, and that conveyances of property adjoining such land have been executed, designating it as part of street, cannot deprive owner of premises of his property without his consent.

**Dedication—Acts Constituting—Intent.**

4. To establish a dedication, owner's acts and declarations should be deliberate, unequivocal and decisive, and manifest a positive and unmistakable intention to permanently abandon his property to the specific public use.

   [As to what amounts to a dedication of a highway, see note in 57 Am. St. Rep. 749.]

**Dedication—Acts Constituting—Intent.**

5. To a common-law dedication it is necessary that there be an appropriation of land by the owner to the public, either by express manifestation of purpose to devote land to public use or by acts or course of conduct from which law would imply such an intent.

**Dedication—Acquiescence in Public Use—Intent.**

6. If the open and known acts of the donor are such as to induce the belief that he intended to dedicate the way to public use, and the public and individuals act upon such conduct and acquire rights, which would be lost if the owner were allowed to reclaim the land, the law will not permit him to assert that there was no intent to dedicate, no matter what may have been his secret intent.

**Dedication—Estoppel to Deny.**

7. Where settler on land, whose heirs subsequently become owners, files a map designating premises as part of a street, he and his successors in interest are estopped to deny that premises were dedicated as a street.

**Dedication—Acts Constituting—Plats.**

8. Filing of plat, showing that premises in question are reserved as private property, shows that there was no express dedication of lands to public use by virtue of map.

**Dedication—Capacity to Dedicate.**

9. An oral dedication of premises as a street cannot be shown by minutes of a city council reciting declarations of one who was not the owner at the time.

From Clackamas: JAMES U. CAMPBELL, Judge.

In Banc.  Statement by MR. JUSTICE BEAN.

This is a suit to quiet title to a triangular shaped piece of land in "Mill Reserve" near the south end of Main Street in Oregon City. The complaint is in the usual form containing the allegations of ownership of a fee-simple title in the Portland Railway, Light and Power Company, and continuous possession for more than ten years under deeds of conveyance containing full covenants of warranty and seizin by plaintiff, and that defendant claims some interest therein.

The answer is a general denial, except that it admits that defendant claims an interest in the premises, and for a further answer alleges that the tract is a public street and has been such for a period of more than fifty years.

The reply is a general denial of the new matter in the answer and further alleges that defendant abandoned the premises as a highway in 1890. For a second separate reply the plaintiff avers that defendant is estopped to claim the premises because of long possession and improvements made by plaintiff. The trial court found that Main Street included the premises in question and rendered a decree accordingly, from which the plaintiff appeals.

About the year 1842 Dr. John McLoughlin settled on what is known as the "Oregon City Claim." He began selling lots about 1843. In 1850, by an act of Congress the United States government granted the claim to the State of Oregon for the benefit of the state university, excepting all lots sold by Dr. McLoughlin

prior to March 4, 1849. The plat of Oregon City was filed in 1851 by him. He died in 1857 leaving as his heirs and devisees Eloisa Harvey, Daniel Harvey, and David McLoughlin. The Harveys having purchased the interest of David McLoughlin became the sole owners of Dr. McLoughlin's interest in the Oregon City Claim. In 1862 the legislature of the State of Oregon granted to Eloisa Harvey and Daniel Harvey the title to the Oregon City Claim upon the payment of the sum of $1,000 for the benefit of the state university fund. No other plat of Oregon City has been made, but lots and blocks therein have ever since been sold with reference to the McLoughlin map, thereby adopting the plat filed. On this map that part of the Oregon City Claim south of blocks 1 and 29 and west of blocks 73, 74, 75, 76, and 77, on the east side of the river is designated as "Mill Reserve," and in the certificate of dedication attached to the map appears the following:

"All the space in front of the blocks on Water Street not covered by the width of the street (60) feet is reserved as private property. All the space below the edge of the bluff and along and in front of blocks 73, 74, 75, 76, and 77, is reserved as private property."

The premises, title to which is involved in this suit, are situated within Mill Reserve and are below the bluff and in front of blocks 73, 74, 75, 76, and 77. For a great number of years there has been a road leading in a southerly direction from the end of Main Street through Mill Reserve to Canemah, the exact location of which is in dispute and is not shown on any official map. When plaintiff's predecessors in interest bought the Mill Reserve from the Harveys in 1865 their deed contained the following exception: "Also saving and reserving the public highway and railroad upon said premises." In 1861 a flood occurred in the

Willamette River which destroyed the Island Mill, the Rossi Foundry and the McLoughlin Mill, and they have never been rebuilt. The flood also destroyed the roads leading to these mills and the foundry and changed the surface of the property immediately east of and around Imperial Mill, which was situated west of the southerly portion of the tract in dispute, by washing away the earth and leaving a ledge of rock exposed. In 1866 the plaintiff's predecessors in interest built the basin dam or wall on the side where the present basin wall stands immediately southerly of the land in dispute. This dam or wall holds back the waters of the Willamette River in such a manner that all that property designated as "basin" on the maps in evidence herein is covered with several feet of water. In 1890 another flood occurred which overflowed the basin wall and destroyed that part of the road to Canemah. Immediately thereafter the city built a plank road thirty-two feet in width east of the Imperial Mill and adjacent to the property in controversy where the road has remained to the present time.

Plaintiff claims record title to the tract as follows: In 1865 Daniel Harvey and wife conveyed by warranty deed to the People's Transportation Company all the Mill Reserve described as above

"save and except so much of said premises as has been conveyed by deed by said parties of the first part, and are now understood to be owned by the Oregon City Woolen Mfg. Co., Savier & Co., and Moore, Marshall & Co., and also saving and reserving the public highway and the railroad upon said premises, and also all ferry rights, appurtenant to said premises, and also a right of way for wagons, etc., from said premises to a ferry and from a ferry to the top of said bluff. Together with all the water rights and privileges appurtenant."

Thereafter the same passed by a succession of warranty deeds from the People's Transportation Company to the plaintiff herein. During the last seven years before this suit, the Hawley Pulp & Paper Company, as tenants of the Portland Railway, Light & Power Company, have built heavy works in the form of bents and platforms for the purpose of piling and stowing pulp on the south portion of the tract, and have built a siding off the main line of the above company's railroad, expending some $2,000 in improvements on the triangle. The city authorities objected and notified the tenant to vacate and this suit resulted. Prior to the time of such occupancy by the Hawley Pulp & Paper Company, the lessee of plaintiff, there was a large hole in the ground down to bedrock which was crossed by a couple of flumes. The Imperial Mill, as now constructed, extends 18 inches over the west line of Main Street projected, and the Hawley Pulp & Paper Company has built an elevated structure over the highway which is used in trucking pulp from Imperial Mill to Sulphite Mill on the east side of the highway. There is shown on the plat in evidence what is termed a private roadway forty feet in width, commencing about one third of the way from the northerly point of the triangle and extending from the road to Canemah across the tract in dispute to the mill on the west. That part of the tract south of this private roadway is separated by a railing on three sides from the Canemah road, the private roadway, and the walk in front of the mill on the west. There is also a railing on the north of the private roadway extending between the Canemah road and the open space north of the private road to a point opposite the roadway leading to the O. R. & N. Company's dock. The so-called private roadway was granted by deed

to·the owner of the mill property on the west of the tract in dispute and is covered with planking upon a grade about one foot below the planking of the Canemah road. The condition of this so-called private roadway and that leading to the O. R. & N. dock are not involved in this suit and only come in incidentally in mentioning travel over the same in connection with the public highway. The private roadway is maintained by the Mill Company for the purpose, as it claims, of ingress to and egress from the mill.

REVERSED. DECREE RENDERED.

For appellant there was a brief over the names of *Mr. Leslie Craven* and *Messrs. Griffith, Leiter & Allen,* with an oral argument by *Mr. R. A. Leiter.*

For respondent there was a brief and an oral argument by *Mr. C. Scheubel.*

MR. JUSTICE BEAN delivered the opinion of the court.

The land involved is in the shape of a right angled triangle, the base being on the west 182 feet with a perpendicular on the south approximately eighty feet. The matter for determination is whether or not the tract has been dedicated to the public as a street or highway. The city contends: First, that the plaintiff never acquired title to the property in question by deed or otherwise; second, that the tract was dedicated as Main Street by Dr. McLoughlin and recognized as such by his successors in interest, including the plaintiff; third, that the tract has been recognized by the public as a part of Main Street since 1855 and prior thereto and was traveled by the public generally from that time until the flood of 1890 when the high

water washed away the earth and left a deep hole on a part of the tract; that the city council continually from 1865 to the present time exercised jurisdiction over the tract as part of Main Street, it being the position of the city that Main Street extended in a straight line from the platted portion to the basin and that formerly a street at right angles and adjoining the basin wall connected the same with the Canemah road.

1–3. When Dr. McLoughlin platted the then future city he displayed a prophetic vision of the beehive of manufacturing industries in and adjoining Mill Reserve which, while they were small in the beginning, have for years been advanced to stages of great magnitude. The right of way for the streets and ways approaching and passing these various plants do not appear to have been neglected. Neither does it seem that there has been any encroachment upon the area so wisely reserved in order to afford some space for the pulsation of industrial life. Although the Willamette River on the west and the bluff on the east fix natural limitations of breadth of the low land at this point, there is no real conflict between the owners of industrial plants and the public as to the means or ways for transportation and travel. None of the grantees of any of the territory embraced in Mill Reserve are objecting to the establishment or use of the highway over the same, which is sometimes designated as a street and sometimes as a county road extending towards Canemah. The only question is: Where is such public way located and what are the limits which its necessities require? Many of the old and respected residents delineated the history of the matters relating thereto. Some perhaps differ from others slightly in memory and use somewhat variant language to describe the interesting and important events which

have had an influence in shaping the issue herein. No one, however, questions the truth of the utterances of any of the witnesses. A narration of the evidence would consume too much time and occupy more than the allotted space. Whatever the conditions of the highway leading southerly from the end of Main Street as platted by Dr. McLoughlin were prior to 1890 when the high water changed the same it is clear from the evidence that beginning at the northerly end of the triangle about 85 feet south of the southerly end of Main Street, as platted, the well defined traveled highway has since that date extended southerly adjoining the land in question on the easterly side leading to Canemah. This roadway constructed by the city is separated on the west from the tract in question by a railing, except for a forty-foot plank roadway leading therefrom to the Hawley Pulp & Paper Company's mill, on the west line of Main Street if extended. The road to the mill was constructed and is maintained by the Mill Company. Formerly the road leading southerly extended about 150 feet over what is now the basin, a part of the same being along an old breakwater and a part over a trestle. Thence one branch led southwesterly to the Island Mill and the other bore easterly towards the bluff and extended to Canemah. Prior to 1890 the triangle was somewhat level but rough. An ox team could be driven in east of the mill, the most of the trucking to and from the mill being at the north end thereof. It is in evidence that some freight was unloaded from boats over the basin wall and transported from there to different places, but mostly, we think, on a plank walk at the east of the mill. The flood of 1890 washed the earth away from the tract leaving bare rough bedrock and necessitating planking the way to the mill and the road to Cane-

mah for a short distance. Since that time the travel has been well confined to the ways named. The most that can be said is that prior to that time the travel spread out over some of the disputed area. The evidence does not evince a dedication by user of any part of the triangle. The permission by the owner of spasmodic or occasional use by the traveling public of uninclosed private real property is not sufficient to indicate an intent to dedicate the property to public use. The city has passed ordinances referring to the land as a part of Main Street and conveyances of property adjoining what would be Main Street if extended have been executed designating an extension of the line of Main Street as the line of the street. Others have referred to the line as a projection of the line of Main Street. Such declarations by the officials of the city would not deprive the owner of his property without his consent.

The intention of the owner as evidenced by his acts and the acts which he permits and encourages is controlling on the issue of dedication. In order to constitute a dedication by parol there must be some act proved which would clearly indicate an intention of the owner to dedicate the land to public use: *Lownsdale* v. *City of Portland,* 1 Or. 381, 405 (Fed. Cas. No. 8578); *Lewis* v. *City of Portland,* 25 Or. 133, 155 (35 Pac. 256, 42 Am. St. Rep. 772, 22 L. R. A. 736); *Parrott* v. *Stewart,* 65 Or. 254, 259 (132 Pac. 523); *McCoy* v. *Thompson,* 84 Or. 141 (164 Pac. 589).

4. The owner's acts and declarations should be deliberate, unequivocal and decisive and manifest a positive and unmistakable intention to permanently abandon his property to the specific public use. If they are equivocal and do not clearly and plainly indicate such intention they are insufficient to establish a dedi-

cation: *Hogue* v. *City of Albina,* 20 Or. 186, 187 (25 Pac. 386, 10 L. R. A. 673).

5. The dedication of land to the public for use as a street or highway may be made either by statutory dedication or by common-law dedication. In the case at bar Dr. McLoughlin, by the map and plan filed, did not undertake to dedicate the land in question to a public use. There has been no attempt to make a statutory dedication. The common-law dedication may be either express or implied. In both common-law dedications it is necessary that there be an appropriation of land by the owner to the public; in the one case by some express manifestation of his purpose to devote the land to the public use; and in the other by some act or course of conduct from which the law would imply such an intent: Elliott on Roads and Streets (3 ed.), § 133. It is stated in that work:

"An implied dedication is one arising by operation of law from the acts of the owner. It may exist by an express grant and need not be evidenced by any writing, nor indeed by any form of words oral or written. It is not founded on a grant nor does it necessarily presuppose one, but is founded upon the doctrine of equitable estoppel. It is in the nature of an estoppel *in pais,* and is irrevocable. It may be established by evidence of conduct and in many ways. If the donor's acts are such as to indicate an intention to appropriate the land to the public use, then upon acceptance by the public the dedication becomes complete": Elliott on Roads and Streets (3 ed.), § 137.

6. It is essential that the donor should intend to set the land apart for the benefit of the public. Such intent is not a secret one, but is that which is expressed in the visible conduct and open acts of the owner. If the open and known acts of the donor are of such a character as to induce the belief that he intended to

dedicate the way to public use, and the public and individuals act upon such conduct and proceed as if in fact there had been a dedication and acquire rights which would be lost if the owner were allowed to reclaim the land, then the law would not permit him to assert that there was no intent to dedicate no matter what may have been his secret intent: Elliott on Roads and Streets (3 ed.), § 138.

In a recent case of *Barton* v. *Portland,* 74 Or. 75 (144 Pac. 1146), this court, speaking through Mr. Justice Moore, discussing prior decisions of this court, said at page 77 of the opinion:

"The rule has been followed in this state that the ordinary statute of limitations has no application as respects the public rights of a municipal corporation, but that by the laches of its officers in failing properly to guard such rights the principle of equitable estoppel may be invoked by a private party, not dependent upon the mere lapse of time, but upon all the circumstances of the case," citing *Schooling* v. *Harrisburg,* 42 Or. 494 (71 Pac. 605); *Oliver* v. *Synhorst,* 48 Or. 292 (86 Pac. 376, 7 L. R. A. (N. S.) 243), and other cases.

In the case of *People* v. *Cleveland etc. Ry. Co.,* 269 Ill. 555 (109 N. E. 1064), the Supreme Court of Illinois said at page 1065:

"Where the public has ceased to travel a road and acquired another which accommodates the public travel, an abandonment of the first road may be presumed. The public authorities having charge of the highways are invested with the right to decide between the relative advantages of the two roads. Where a highway ceases to be used, and another is acquired in its place with the consent and approval of the public authorities, and the use of the original highway has ceased for a sufficient length of time to clearly indicate an acceptance by the public of the new highway,

the old one will be regarded as abandoned'': See, also, *Lucas* v. *Payne,* 141 Iowa, 592 (120 N. W. 59).

7–9. While the city has attempted to exercise jurisdiction over the land in controversy, it does not appear that it has ever expended a penny in improving the same or removing any obstructions therefrom. If the premises in suit had been designated on the map filed by Dr. McLoughlin as a part of the street he and the Harveys and their successors in interest would be estopped to deny that it was dedicated for the public use as a street by virtue of the rule of law announced in *Mutual Irr. Co.* v. *Baker City,* 58 Or. 306 (110 Pac. 392, 113 Pac. 9). The land was designated on that map as Mill Reserve and it was stated that all the space below the edge of the bluff along and in front of the blocks mentioned was reserved as private property. It is clear therefore that there was no express dedication of the land to the public use by virtue of the map. On the contrary, an intention to reserve this land as private property is plainly expressed. It appears that an entry of the minutes of the city council was introduced in evidence which recites that Dr. McLoughlin informed the council that Main Street ran into the Willamette River. It is urged by counsel for the city that this tends to prove an oral dedication of the premises as a street. At the time of this statement made by Dr. McLoughlin, he did not own the premises in controversy, but died before the title was acquired.

The record does not disclose that there has been either a statutory or common-law dedication of the land to the public as a street or road. The city never acquired an easement for a highway over the tract either by virtue of a dedication or by user.

The decree of the trial court will therefore be reversed and one entered here quieting the title to the real property as prayed for.

REVERSED.   DECREE RENDERED.   REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE took no part in the consideration of this case.