Argued March 16; affirmed May 9, 1939

# SECURITY & INVESTMENT CO. OF OREGON CITY *v.* OREGON CITY

### (90 P. (2d) 467)

422

Department 2.

*Alden E. Miller*, City Attorney, of Oregon City, and J. M. Devers, Assistant Attorney General (I. M. Schannep, of Salem, on the brief), for appellant.

*John R. Latourette*, of Portland (A. G. Beattie, of Oregon City, on the brief), for respondent.

BELT, J. This is a suit to quiet title to the so-called street ends or extensions of 4th, 5th, 6th, 8th, 9th, and 10th streets in Oregon City from Water street westerly to the Willamette river as shown on the "map and plan" of Oregon City, acknowledged by Dr. John McLoughlin on December 2, 1850, and filed on January 7, 1851. Plaintiff asserts that, by virtue of mesne conveyances from the heirs, legatees, and devisees of Dr. McLoughlin and by certain sheriffs' tax deeds, it is the owner in fee simple of the above strips of land.

The defendant city does not deny that title is vested in the plaintiff if its predecessors had any interest in such land to convey. The city contends that the land in controversy has been dedicated as streets for the use of the public. It is conceded by the city that, if there has been no dedication of this land as streets, the plaintiff is entitled to prevail.

The plaintiff also contends that, even if it be assumed that there has been such dedication of the land in controversy, the city, by reason of permanent and valuable improvements made thereon by plaintiff and its predecessors in title with the acquiescence of the city, is estopped to assert that these strips of land are streets.

Plaintiff asserts it was not the intention of the dedicator that 4th, 5th, 6th, 8th, 9th, and 10th streets should extend westerly beyond the west line of Water street.

The city urges that the intention of Dr. McLoughlin, as shown by the plat, was to extend these intersecting streets across Water street to the low-water mark of the Willamette river.

From a decree that plaintiff is the owner in fee simple of the land described in the complaint, the defendant city appeals.

Since—aside from the question of estoppel—the intention of the dedicator is the vital issue in this case, it is well to review briefly the genesis of this historic "map and plan" of Oregon City. Prior to enactment of the congressional Donation Act of 1850, Dr. John McLoughlin, a British subject and an officer of the Hudson Bay Company, settled on what is generally known as the "Oregon City Claim". Desiring to use a part of the claim for laying out and establishing a townsite along the eastern bank of the Willamette river adjacent to the falls, he caused Jesse Applegate in 1844 to make a survey and map of the land extending back from the river for a distance of about 1,300 feet. In 1849, he laid out an addition to the town east of what is now known as Washington street. Although McLoughlin, being an alien, had no title to the land which he had dedicated as a townsite, sundry lots and blocks were sold by him with reference to the plat filed in 1851. Congress ratified and confirmed all transfers made by Dr. McLoughlin prior to March 4, 1849, but title to the remainder of the land not so conveyed was confirmed in and to the Territory of Oregon, providing that the proceeds of sales of land from such grant should be placed at the disposal of the Legislative Assembly of the territory for the endowment of a university. After March 4, 1849, and prior to receiving notice

of the passage of the "Donation Act" by Congress, McLoughlin sold a number of additional lots, but the Legislature, in 1851, confirmed title in such purchasers. Dr. McLoughlin died in 1857, leaving as his legatees his son David and his daughter Eloise and her husband Daniel Harvey. Harvey acquired all the interest which David McLoughlin had in his father's estate. In October, 1862, the Legislature formally accepted the federal grant of the "Oregon City Claim" and, in consideration of $1,000, confirmed title thereto to Daniel Harvey and his wife: General Laws of Oregon 1862, p. 90. After thus becoming the owners of the property, the Harveys adopted and ratified the McLoughlin map by selling lots and blocks with reference thereto. This "map and plan" of Oregon City as filed by Dr. McLoughlin in 1851 has for many years been recognized as the official plat of Oregon City: *Oregon City v.Oregon & Cal. R. Co.*, 44 Or. 165, 74 P. 924; *Chase v. Oregon City*, 72 Or. 527, 143 P. 1111; and *Portland Ry. L. & P. Co. v. Oregon City*, 85 Or. 574, 166 P. 932.

In 1846, a few years prior to the time Dr. McLoughlin laid out and established the townsite, Oregon City had a population of 500 and there were about seventy houses: Carey's History of Oregon, Vol. 1, p. 751. The doctor had completed his small sawmill near the falls. Roads and highways were unknown and the river, a navigable stream, was the sole avenue for transportation.

Dr. McLoughlin was a shrewd business man with a prophetic vision and it is not surprising that, in dedicating property for public use, certain reservations hereinafter discussed, relative to the land along the river front, should have been made.

Oregon City lies on the east bank of the Willamette river. Running parallel with the river and about 300 feet east of it is a high, rocky bluff which divides the townsite into what might be called the "upper town" and the "lower town". On the lower plane next to the river is the business district. This plane is so narrow that it affords space for only two streets, Water street and Main street. Intersecting these two streets at right angles, about 200 feet apart, are numerically designated streets, 1 to 15 inclusive. The top of the east bank of the river is about forty feet above ordinary low water mark and is on approximately the same level as the above named two streets in "lower town". The bank of the river extending to the water line is of solid rock formation, precipitous and of uneven contour.

Water street, which runs along the top of this high bank parallel with the river, is designated on the plat as being 60 feet in width. At some points on Water street the irregular line of the bank encroaches upon it so as to necessitate the construction of fills in order to maintain vehicular traffic. The river itself encroaches upon Water street at only one point—between 8th and 9th streets. Here the river forms a cove extending into Water street. A dock was maintained there for many years. In more recent times the dock was abandoned and a bridge was built across this cove on Water street. For the entire length of Water street, excepting the cove between 8th and 9th streets, there is land between the west line of Water street and the river. A part of such irregular strip of land was platted by Dr. McLoughlin as fractional lots and the remainder thereof reserved as private property. On some of these fractional lots, buildings have been erected and maintained for many years.

At this juncture, reference to the following rough sketch of the McLoughlin plat may be helpful.

Having in mind the above plat it is well to consider the map prepared by the State Highway Department in February, 1936, and corrected as of February, 1937, concerning the locus in quo. This map, prepared by skilled engineers with instruments of precision, shows that the distance between the west line of Water street and the river opposite 10th street is from 89 to 100 feet; opposite 9th street from 108 to 131 feet; opposite 8th street, 42 to 60.8 feet; and opposite 6th street, from 31.4 to 65 feet. It is evident from these measurements that the west line of the Applegate survey made in 1844 marks the edge of the high bank and not the river or property line of the "Oregon City Claim". It is quite reasonable to assume that Applegate, in making his survey, ran his lines for Water street by omitting the rough land between the bank and the water's edge as being utterly unfit for a street. Dr. McLoughlin acknowledged his dedication six years after this survey was made. The map before him showed the encroachment on Water street which he desired to be 60 feet in width. It is probable that he contemplated that sufficient land on the lower level would be taken to give the street full width. If this west line of the Applegate survey represents the property line of the claim at the edge of the river, then the intention to have Water

street 60 feet in width, as declared in the legend, would be rendered futile as the dedicator did not own the bed of the river.

Referring to the McLoughlin plat, it is observed that there are no parallel lines opposite 4th, 8th, and 9th streets, indicating any intention to dedicate the areas in question as streets, although there was sufficient land west of Water street upon which such lines could have been extended had the dedicator desired.

It is observed from the plat that on 7th street, where the bridge across the river is located and has been for many years, two parallel lines are extended beyond Water street indicating a clear intention to dedicate such area as a street. This street is not in controversy but reference thereto is pertinent relative to the question of intention of the dedicator. It may also be noted that further provision for access to the river at almost water grade was made at 15th street—the plat showing two parallel lines extending beyond Water street. The map shows that fractional lots have been platted opposite 5th, 6th, and 10th streets. It is observed that only single lines have been extended beyond Water street, although there was land west of such street upon which two parallel lines could have been extended—thus clearly indicating streets—had the dedicator so desired.

Do these single lines indicate boundaries of fractional lots or the extension of streets? Engineers, called as expert witnesses, differed in their opinions as to the meaning of these single lines opposite those indicating the so-called street ends in question. Henry J. Richardson, a witness for the defendant, who has been chief surveyor for the city of Portland for more than 30 years, testified on cross examination that it took "two sides to make a street" and that the single

lines above mentioned did not indicate any intention to extend the streets involved herein to the river. This witness answered in the affirmative in response to the following question, "So the only one here that shows a street across Water street is Seventh, in the ordinary engineering practice?". D. Y. Meldrum, a witness on behalf of the plaintiff and an experienced engineer, in response to the question, "* * * you will observe opposite Tenth street a little line on the northerly side of what would be Tenth street extended. From the lines as they appear there in the ordinary parlance of engineers, would there, or would there not, be a street extending past the 60-foot width of Water street?" answered, "I would say that it didn't indicate anything in regard to the street." The same answer, in substance, was made in reference to the single lines opposite those indicating other streets in controversy. Other engineers called by the defendant supported its theory that the streets extended to the river. Of course, all this testimony of the engineers was at best merely advisory. The opinions expressed did not take into consideration the reservations of the dedicator nor the general contour of the land west of Water street. After all, it remained for the court to ascertain the intention of Dr. McLoughlin, after a consideration of all the facts and circumstances of the case. As was well stated by the trial judge in his able memorandum opinion: "The record shows that the pivotal question to be determined is the intention of the dedicator with respect to the street ends at Water street. This common law dedication to the use of the public rests upon the intention and clear assent of the owner of the soil. Therefore, Dr. McLoughlin's conduct in the creation of this plat must be surveyed in the light of the then existing conditions, and not only must the acts and documents

created by the dedicator be considered, but likewise the general character of the land and the condition. of the country at the time of the dedication.'' Plats by which dedications are made are to be interpreted by the court as any other writing would be, and are to be construed as a whole in order that the intention of the dedicator may be ascertained, and every part of the instrument given effect: *Chase v. Oregon City,* supra; Elliott on Roads and Streets (4 Ed.), Vol. 1, § 130; 18 C. J. 109.

■ In our opinion it was not the intention of Dr. McLoughlin to extend the streets in question to the river. It would have been unreasonable to do so in view of the precipitous bank and the general contour of the land. The narrow strip of rough and rocky land along the river had no value for street purposes. It had a definite value for moorage, wharfage, and manufacturing purposes which would have been greatly lessened if its continuity had been broken by theoretical streets never to be constructed. Dr. McLoughlin made ample provision for access to the river over 7th and 15th streets.

On August 7, 1865, Daniel Harvey and his wife, by warranty deed, conveyed to the People's Transportation Company, a corporation, all the land west of Water street from the ''Mill Reserve''—located at the south end of Main street—to Sixth street. This conveyance included property in controversy opposite 4th and 5th streets. In view of the fact that the validity of the McLoughlin plat was established by their adoption and ratification, this conveyance is strong proof of their interpretation of the plat. The Harveys, in all probability, knew what Dr. McLoughlin intended by his dedication.

The record discloses that, in 1895, T. L. Charman, a predecessor in title of the plaintiff, fenced all the

property west of the west line of Water street from the south line of 4th street to the north line of 10th street and that this fence was maintained for many years.

■ Any doubt about the intention of Dr. McLoughlin we think is removed by the express reservation as shown on the plat of "all the space in front of the blocks on Water Street not covered by the width of the street (60 feet) is reserved as private property." In reference to this reservation, the defendant contends that "in front of" means the land lying between the projecting lines of the blocks directly to the river and is not broad enough to include the strips of land in controversy. We cannot agree with this narrow construction. It is our opinion that Dr. McLoughlin intended to reserve as private property all unplatted land between Water street and the river excepting 7th and 15th streets which were plainly designated as streets.

In *Portland Ry., L. & P. Co. v. Oregon City,* supra, the court had under consideration the following reservation: "All the space below the edge of the bluff *along the front* of blocks 73, 74, 75, 76, and 77 is reserved as private property." (Italics ours). It was contended that the dedicator intended streets to run through the "Mill Reserve" but the court held to the contrary. In *Oregon City v. Oregon & Cal. R. Co.,* supra, the court again had under consideration the McLoughlin plat. The case involved a certain strip of land at the foot of the bluff, about 300 feet east of Water street, which the city asserted was a street, and also land on top of the bluff which had been reserved as a "promenade for the inhabitants of Oregon City." In determining the intention of the dedicator, it was, of course, necessary to consider the plat in its entirety and its various reservations. The court, speaking through Mr. Justice

ROBERT S. BEAN, in reference to the questions under consideration, said:

"It must be presumed, therefore, that it was the intention of McLoughlin and the Harveys to donate the strip of land in controversy to the public. This presumption is confirmed by the fact that the space below the bluff immediately south of and adjoining that in controversy (Mill Reserve) and *the space between Water Street and the river are expressly reserved as private property*, thus indicating an intention to donate all other vacant spaces shown on the map to the public." (Italics ours.)

It is true that the reservation herein involved was not in controversy but the construction which the court gave it is, nevertheless, highly persuasive.

It is significant that more than 80 years have elapsed since this plat was filed and Oregon City has never made any attempt to extend these streets. On some of these street ends, valuable and permanent improvements have been made by plaintiff and its predecessors in title. Taxes for many years have been paid on these strips of land as private property. The instant suit arose by reason of the State Highway Commission's undertaking to widen Water street in order to make it a connecting link with the Pacific Highway.

 Dedication is an appropriation of land by the owner for a public use. Dedication is not presumed: *City of Clatskanie v. McDonald*, 85 Or. 670, 167 P. 560; *Hogue v. City of Albina*, 20 Or. 182, 25 P. 386, 10 L. R. A. 673; McQuillan on Municipal Corporations (2d Ed.) § 1694. As stated in the early case of *Lownsdale v. City of Portland*, 1 Or. 397, and quoted with approval in the Hogue case:

"The burden of proof rests on the defendant to show a dedication. It must be clear and satisfactory. * * *

The security and certainty of the title to real estate are among the most important objects of the laws of any civilized community. Around it the law has thrown certain solemnities and formalities so that the fact may be known and read by all men. What a man once had he is not presumed to have parted with, but the fact must be shown beyond conjecture. And although in the case of streets and public grounds in towns, from the nature of the case a dedication may be shown by acts resting on parol, they must be of such a public and deliberate character as makes them generally known and not of doubtful intention.''

To constitute a valid dedication there must be an intention on the part of the owner to devote his property to a public use, and this intention must be clearly and unequivocally manifested: *Lownsdale v. Portland,* supra; *Hogue v. Albina,* supra; *Harris v. St. Helens,* 72 Or. 377, 143 P. 941, Ann. Cas. 1916D, 1073; *Portland Ry., L. & P. Co. v. Oregon City,* supra; 18 C. J. 51. In some jurisdictions where the intention to devote land to a public use is doubtful, such doubt is resolved against the donor, but such is not the rule in this state.

Applying the above well-established legal principles to the facts in this case, we cannot say that the intention of Dr. McLoughlin and the Harveys to dedicate the land in controversy as streets has been clearly and unequivocally manifested, or that it has been established by the greater weight of the evidence. In view of this conclusion, it is unnecessary to consider the question of equitable estoppel.

The decree of the lower court is affirmed. Neither party will recover costs or disbursements.

RAND, C. J., and BAILEY and LUSK, JJ., concur.