**SHAYNE BROS., INC., Plaintiff,**

v.

**DISTRICT OF COLUMBIA, Defendant.**

**Civ. A. No. 83–2064.**

United States District Court,
District of Columbia.

Aug. 27, 1984.

---

Jefferson V. Wright, Baltimore, Md., for plaintiff.

Jared H. Silberman, Asst. Corp. Counsel, Washington, D.C., for defendant.

## MEMORANDUM ORDER

JACKSON, District Judge.

This case presents a constitutional challenge to a District of Columbia ("District") health regulation which prohibits the disposal of solid waste matter collected beyond the city limits in "disposal facilities operated by the District" without its prior permission. It is now before the Court on the District's motion to dismiss on jurisdictional grounds, and cross-motions for summary judgment on the merits. For the reasons hereafter stated the Court will deny the motion to dismiss and plaintiff's motion for summary judgment and will grant defendant District of Columbia's motion for summary judgment.

### I.

Plaintiff Shayne Bros., Inc., ("Shayne") is a District of Columbia corporation in the business of trash removal in the District of Columbia and neighboring jurisdictions in suburban Maryland and Virginia. It holds a solid waste collector's license from the District, and some 22 of its 60 trucks are licensed to operate in the District. The District of Columbia itself operates three solid waste landfills—two of its own within the city and a third it shares with several other local governments in nearby Fairfax County, Virginia—primarily to accommodate refuse generated by businesses and homes in the District.[1] To that end it has enacted a municipal regulation, D.C.Regulation 8–3:609, which provides as follows:

(a) Solid wastes generated outside the District shall not be delivered to any of the disposal facilities operated by the District unless prior arrangements for

acceptance have been made with the Commissioner.

(b) Should any licensee or his agent violate this section, any or all vehicles operated by said licensee may be denied access to any or all District disposal facilities for a period not to exceed thirty days for each such violation. Prior to such denial of access the licensee may request and shall be afforded an administrative hearing by the Director of the Department of Environmental Services or his duly authorized agent on the proposed denial. Nothing in this subsection shall prevent a licensee from being prosecuted for violation of the Regulations in this Part.[2]

On March 26, 1983, a Shayne truck was inspected at one of the D.C. landfills and found to contain waste matter originating in Maryland. As a result, the offending truck was barred from in-city landfills for a month, and Shayne was notified that if the transgressions were repeated within the year, all of its trucks would be suspended automatically for 90 days. On July 20, 1983, Shayne filed the instant complaint for declaratory and injunctive relief against the District of Columbia,[3] alleging that D.C.Regulation 8–3:609 imposes an unconstitutional burden upon interstate commerce in violation of the Commerce Clause of the U.S. Constitution, Art. I, § 8, cl. 3.

### II.

■ The District of Columbia moves to dismiss on the ground that Shayne has failed to exhaust its administrative remedies, viz., the administrative hearing to which it is entitled before being denied access to intra-city disposal sites, to be followed by judicial review of any decision within the District's own judicial system. Alternatively, it argues, Shayne could as-

---

**1.** Although D.C. zoning regulations do not prohibit private landfills within its boundaries, none currently exist.

**2.** D.C.Regulation 8–3:612 provides for criminal penalties up to a fine of $300 or imprisonment

for 10 days, or both, for failure to comply with any health regulation.

**3.** Shayne's motions for a temporary restraining order and preliminary injunction accompanying the complaint were withdrawn August 29, 1983.

sert its constitutional claim in defense of a criminal prosecution for future violations of the regulation. Finally, it urges this Court, as a federal court, to abstain under the "Pullman Doctrine" from a decision on constitutional grounds as to the validity of purely local legislation not yet considered by a local tribunal.

Shayne responds that none of the usual reasons obtain here for insisting upon a prior resort to the administrative process before suit. It admits that it was in violation of the regulation in March, 1983, and it expects in the future to collect trash in Maryland and bring it into the District if it can do so legally. A fact-finding hearing is, thus, unnecessary. No special administrative expertise is involved, and no on-going administrative proceedings will be disrupted, none having been commenced or even contemplated by either party. To the extent unconstitutionality might be a defense to a criminal prosecution, it is unlikely ever to receive a hearing. Shayne's grievance is with the District's right to evict it from its landfills, whether or not it is ever prosecuted for attempting to enter them by force or stealth.

It is true, of course, that federal courts are to avoid "needless friction with state policies" by refraining from constitutional adjudication concerning them when a decision by a state court on other than constitutional grounds might make an end of the controversy. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 500, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). It appears that D.C.Regulation 8–3:609 has yet to receive a construction by a District of Columbia court, and until it does it is impossible to say for a certainty that it may be lawfully applied as it has been to Shayne. Abstention is, however, generally appropriate only when state law is ambiguous or unsettled, not merely unconstrued, *see Wisconsin v. Constantineau*, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971), and if there is a saving construction to be put upon Regulation 8–3:609 without assaying the burden it places upon interstate movement of waste materials, the District has yet to suggest it. The regula-

tion is impeccably clear: the District can reject refuse from other jurisdictions, or impose conditions upon its receipt not imposed upon identical matter entering its waste disposal process from a point within the city, for any reason or none.

Abstention for the sake of federal-state harmony alone is not required, *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813–14, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976), and the Court declines to await a decision by a District of Columbia court on an issue now properly before it. *See Timmons v. Andrews*, 538 F.2d 584, 585–86 (4th Cir. 1976); *Silver v. Woolf*, 538 F.Supp. 881, 883–85 (D.Conn.1982), *affirmed*, 694 F.2d 8 (2d Cir.1982), *cert. denied*, 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983).

### III.

■ Assuming that the conservation of a finite capacity to dispose of discarded substances within its territorial limits as unoffendingly as possible is a legitimate local public interest, it is clear that D.C.Regulation 8–3:609 is less than "even-handed" in its treatment of domestic and foreign waste. If the Commerce Clause applies, the regulation's compatability with it cannot be determined solely by balancing its incidental regulatory burden on the traffic in the commodity with the importance of the local interest it subserves. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). Being avowedly protectionist in purpose and effect, as a regulatory measure it could stand only if no nondiscriminatory alternative can be devised, *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 353, 97 S.Ct. 2434, 2446, 53 L.Ed.2d 383 (1977), and, if it is considered as legislation which is intended to bar the commodity from intra-District destinations altogether, Shayne contends that it is within the "virtually *per se* rule of invalidity" of *Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978).

In *Philadelphia v. New Jersey, supra,* the Supreme Court held invalid a New Jersey statute resembling D.C.Regulation 8–3:609 which provided, in pertinent part, that, without prior leave from administrative authorities, "[n]o person shall bring into this State ... any solid or liquid waste which originated or was collected outside the territorial limits of this State." N.J. Admin.Code 7:1–4.2 (Supp.1977). Reversing a judgment of the Supreme Court of New Jersey, the Supreme Court rejected its conclusion that "valueless waste" was not an article of commerce at all, 437 U.S. at 622, 98 S.Ct. at 2534, and declared that, whether the legislative purpose was to protect New Jersey's economy or its environment, laudable as both might be, the absence of a distinction between in-state and out-of-state waste, in terms of their comparative harmfulness to either, infected the statute with the "evil of protectionism" which the Commerce Clause forbids. *Id.,* 437 U.S., at 626–27, 98 S.Ct. at 2536–37. New Jersey might "pursue those ends by slowing the flow of *all* waste into the State's remaining landfills," it said, but it could not do so by means of "isolating the State from the national economy." *Id.*

*Philadelphia v. New Jersey* was decided, however, in the context of an action by operators of *private* landfills in New Jersey and their municipal customers in other states to strike down a statute which (with one exception)[4] attached no significance to the point of destination of the proscribed cargo within the state, or, for that matter, whether it was to remain within the state or was merely in transit. Neither did the Supreme Court attach significance to the omission, other than to note that it was expressing "... no opinion about New Jersey's power, consistent with the Commerce Clause, to restrict to state residents access to state-owned resources, [citations omitted] ...." *Id.,* 437 U.S., at 627–28 n. 6, 98 S.Ct. at 2537–38 n. 6. It is that pregnant footnote, and the cases cited, which, the District says here, distinguishes *Philadelphia v. New Jersey* from the instant case.

Among the cases cited in footnote six was *Hughes v. Alexandria Scrap,* 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976), upholding a Maryland statute designed to clear the landscape of abandoned automobiles by authorizing the payment of state-funded bounties for Maryland-titled wrecks to in-state scrap processors upon less onerous title-document requirements than those demanded of out-of-state processors. Reversing the judgment of a three-judge district court which had found the statute to be an impermissible burden upon interstate commerce, the Supreme Court said:

> The common thread of [cases finding impermissible burdens upon interstate commerce in state regulatory regimes] is that the State interfered with the natural functioning of the interstate market either through prohibition or through burdensome regulation. By contrast, Maryland has not sought to prohibit the flow of hulks, or to regulate the conditions under which it may occur. Instead, it has entered the market itself to bid up their price.

*Id.,* 426 U.S., at 806, 96 S.Ct. at 2496. The court continued to hold that the entry by a state itself into a market and then favoring its own citizens with its trade is not the type of trade barrier forbidden by the Commerce Clause. *Id.,* 426 U.S., at 808–10, 96 S.Ct. at 2496–98.

Three justices dissented in *Alexandria Scrap,* asserting that the majority opinion represented a "reinterpretation of the Commerce Clause and [a] repudiation of established principles guiding judicial analysis thereunder," 426 U.S. at 817, 96 S.Ct. at 2501.

Thereafter, in *Reeves, Inc. v. Stake,* 447 U.S. 429, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980) a majority of five justices upheld the constitutionality of a state administrative ruling giving state residents priority over non-residents in purchasing cement (a commodity then in short supply) from a state-owned plant. Rejecting an argument that

---

**4.** The statute itself excepted garbage intended as food for swine. Implementing administrative regulations later exempted waste to be reclaimed, recycled, or used for fuel.

the policy underlying the ruling was to "hoard" its natural resources, the majority held that cement, as the end product of a complex manufacturing process, was "not a natural resource, like coal, timber, wild game, or minerals" (or, for another, landfill sites, citing *Philadelphia v. New Jersey*) for which the Commerce Clause mandates an untrammelled national market. 447 U.S. at 443, 100 S.Ct. at 2281. The court reaffirmed the distinction between the state as vendor or purchaser in, as opposed to regulator of, interstate commerce, saying:

> The basic distinction drawn in *Alexandria Scrap* between States as market participants and States as market regulators makes good sense and sound law. As that case explains, the Commerce Clause responds principally to state taxes and regulatory measures impeding free private trade in the national marketplace .... There is no indication of a constitutional plan to limit the ability of the States themselves to operate freely in the free market.

*Id.*, 447 U.S., at 436–37, 100 S.Ct. at 2277–78. The "protectionism" held to be inimical to the Commerce Clause in *Philadelphia v. New Jersey, supra,* is not found in

> ... rules restricting to state residents the enjoyment of state educational institutions, energy generated by a state-run plant, police and fire protection, and agricultural improvement and business development programs. Such policies, while perhaps 'protectionist' in a loose sense, reflect the essential and patently unobjectionable purpose of state government—to serve the citizens of the State.

*Id.*, 447 U.S., at 442, 100 S.Ct. at 2280.

The author of the majority opinion in *Alexandria Scrap* was joined by four justices in dissent in *Reeves*, arguing that the distinction drawn by *Alexandria Scrap* between permissible and impermissible chauvinism by a state as a market participant turns on "the nature of the governmental activity involved."

> If a public enterprise undertakes an "integral operatio[n] in areas of traditional

governmental functions," [citation omitted] the Commerce Clause is not directly relevant. If, however, the State enters the private market and operates a commercial enterprise for the advantage of its private citizens, it may not evade the constitutional policy against economic Balkanization.

447 U.S. at 449–50, 100 S.Ct. at 2284. The state could, the dissent reasoned, withhold as much cement as it might need for public construction projects, but it could not favor in-state over out-of-state customers. *Id.*, 447 U.S., at 452, 100 S.Ct. at 2285.

Most recently, however, in *White v. Massachusetts Council of Const. Employees, Inc.,* 460 U.S. 204, 103 S.Ct. 1042, 75 L.Ed.2d 1 (1983), upon the authority of *Alexandria Scrap* and *Reeves,* the court upheld (with but two dissents) the constitutionality of a municipal order requiring that construction projects paid for with city funds be executed with a work force of whom at least half were to be city residents, stating those cases to "stand for the proposition that when a state or local government enters the market as a participant it is not subject to the restraints of the Commerce Clause." *Id.*, 103 S.Ct. at 1044. Thus it appears that a solid (if shifting) majority of the Supreme Court continues to hold to the view that, no matter the commercial context or the manner of its acting, when the state itself is merchant or customer the Commerce Clause does not apply.

 Shayne contends that the dichotomy fails to save the District's regulation here, because the District is, in reality, a market regulator masquerading as a participant. Not only are there no private landfills within the city competing with the District for Shayne's business, the regulation is part of a comprehensive scheme of regulations dealing with solid waste disposal, involving licenses, official oversight, hearings and sanctions, and the like. But the fact that the District has accomplished by an ordinance what it might have done by contract (or, for that matter, by simply exercising its landowner's prerogative to

bar entry) does not alter the essence of its act. The District is expending a public resource, as much so as the money in its treasury or the services of its police, firefighters and teachers, albeit upon terms which prefer its citizens over others, and that is precisely what the Supreme Court has thrice now held that a state is entitled to do without offending the Commerce Clause.

In *County Commissioners of Charles County v. Stevens*, 299 Md. 203, 473 A.2d 12 (1984) the Court of Appeals of Maryland had occasion to determine precisely the question presented here in the context of an identical challenge to a county regulation of Charles County, Maryland, brought by a private refuse-disposal firm which sought, as Shayne does here, to deposit debris it had collected elsewhere in a county-owned landfill in violation of the regulation which forbade it. The regulation was part of regulatory regime, and it applied only to *public* trash disposal areas, but the landfill happened to be the only one operating in the county, although without an official monopoly. The circuit court enjoined the regulation's enforcement, finding it to be "basically an economic protectionist measure" without a redeeming local purpose, but, bypassing an intermediate appellate court, the court of appeals granted certiorari and reversed. It distinguished two earlier cases, one of its own and the other of the federal district court in Baltimore, which had invalidated other county ordinances embargoing extra-county waste materials generally, and, in a review of both Supreme Court and lower federal court precedents since *Philadelphia v. New Jersey*, reached the conclusion that Charles County was a "market participant" and its regulation thus relieved of Commerce Clause scrutiny. 473 A.2d at 19.

The market in which the County participates in the operation of the ... landfill is not waste. The County neither buys nor sells refuse deposited in its landfill. Rather, it provides a service to [plaintiff] and the other private waste haulers, i.e., for a fee, the County accepts the waste they have collected, compacts it and cov-ers it with soil so that its final disposal complies with all applicable environmental and health laws. Therefore, for purposes of the market participant analysis in this case, the market is landfill services.

Solid waste haulers in Maryland may dump solid waste only in authorized landfills. The haulers must either construct their own landfill or pay for the use of one operated by another. Charles County has constructed a landfill to accommodate the waste generated in the County. [The regulation] does nothing more than limit the benefits of this service to the County taxpayers who pay for it. The regulation applies only to one participant in the market—the [county] facility. It does not restrict the disposal of waste collected outside of Charles County in any other landfill that might be constructed within the County. Neither [the regulation] nor any other state or county law or regulation would prohibit [plaintiff] or others from purchasing land in Charles County and constructing a landfill.

*Id.* at 19.

This Court is of the opinion that the Maryland Court of Appeals has correctly discerned the difference between *Philadelphia v. New Jersey* and the "market participant" cases, and that its analysis is altogether apposite to a consideration of the District of Columbia regulation at issue here. For the same reasons, therefore, the Court grants the District's motion for summary judgment, and it is, this 24th day of August, 1984,

ORDERED, that the complaint is dismissed with prejudice.